Matthews v. Skinker, et al.,

————o————

ELIZABETH A. MATTHEWS, Defendant in Error, *vs.* THOMAS K. SKINKER, *et al.*, Plaintiffs in Error.

1. *Corporations—Grant of powers must be strictly pursued.*—Corporations have only such powers as are specially given by their charters, or are necessary to carry into effect some specified power; and the mode of procedure prescribed be the terms of the grant must be strictly pursued.   Any other exercise of powers is *ultra vires.*

2. *National bank cannot take real estate security for contemporaneous loan—Injunction.*—Under the Act of Congress (Rev. Stat. U. S., p. 998 ; See §§ 5136, 5137) a national banking association has no power to take a deed of trust on real estate as security for a contemporaneous loan ; and it has no powers not conferred by congress.   And injunction will lie to prevent a sale by the bank under the deed.

*Error   to St. Louis Circuit Court.*

*Britton A. Hill,* for Plaintiffs in Error, cited Green's Brice's Ultra Vires 39, 40 and notes.

*Noble & Orrick,* for Defendant in Error cited 2 N. J., 623 ; 2 Cow., 419 ; Beaty vs. Knowles, 4 Pet., 152 ; 15 Ohio St. R., 85 ; 7 Ga., 221 ; McMaster vs. Reid, 1 Grant's Case Penn.,

36 ; 15 Johns., 358 ; 2 Conn., 678 ; 5 Conn., 560 ; 2 Comst., 430 ;
Wiley vs. First Nat. Bk. of Brattleboro, 47 Vt., 552 ; Am.
Law Reg., June 1875, p. 342 ; Wickler vs. First Nat. Bk. of
Hagerstown, Am. Law Reg. Oct. 1875, 616 ; 7 Mo., 585 ; 18
Wall., 588 ; Fowler vs. Scully, 72 Penn., 468.

WAGNER, Judge, delivered the opinion of the court.

The error complained of in this case is the action of the
court in rendering a perpetual injunction restraining the trus-
tees from selling the plaintiff's property. From the record
it appears that the plaintiff executed her note payable to Ster-
ling Price & Co. for $15,000, due two years after date, and to
secure payment of the note she made a deed of trust, bear-
ing even date with the same, on certain real estate belonging
to her. The note and deed of trust were delivered to Ster-
ling Price & Co., who afterwards transferred them to the
Union National Bank of St. Louis, a banking institution or-
ganized under the act of congress, to secure a loan for $15,000,
advanced to Price & Co. by the bank. Price & Co. having
failed to pay the money advanced on the note, and secured by
the deed of trust, the trustee, at the request of the bank, ad-
vertised the property for sale, and the plaintiff filed her peti-
tion to enjoin the trustee and the bank from proceeding with
the sale. Whether the deed of trust in the hands of the bank
amounted to a valid security, which could be enforced in
payment of the money advanced, depends upon the construc-
tion of the act of congress providing for the formation of
national banking associations [Rev. St. U. S., p. 998]. By
§ 5136 of the Rev. St., authority is given to the banking asso-
ciations " to exercise by its board of directors, or duly author-
ized officers or agents, subject to law, all such incidental
powers as shall be necessary to carry on the business of bank-
ing, by discounting and negotiating promissory notes, drafts,
bills of exchange and other evidences of debt by receiving
deposits ; by buying and selling exchange, coin and bullion,
by loaning money on personal security," &c. By § 5137 it
is provided that : "A national banking association may purchase

hold and convey real estate for the following purposes, and for no other. First, such as shall be necessary for its immediate accommodation in the transaction of its business. Second, such as shall be mortgaged to it in good faith by way of security for debts previously contracted. Third, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings. Fourth, such as it shall purchase at sales under judgments, decrees or mortgages held by the association, or shall purchase to secure debts due to it."

The act, as will be thus seen, gives the association power to loan money on personal security, and to purchase, hold and convey real estate in certain specified cases.

The general principles defining the extent and mode of exercise of corporate powers are well settled and have often been passed upon by this court. Corporations have only such powers as are specially given by their charters, or are necessary to carry into effect some specified power. (St. Louis vs. Russell, 9 Mo., 507; Blair vs. Perpetual Ins. Co., 10 Mo., 559; Ruggles vs. Collier, 43 Mo., 353.) They must act strictly within the scope of the powers conferred on them by the act calling them into being; and where a grant of power from the legislature is relied on, the mode prescribed in that grant for doing any particular thing must be pursued according to the law creating them. (Han. & St. Joe R. R. Co. vs. Marion Co., 36 Mo., 294.) The distinction between natural persons and corporations is, that while the former may make any contract not prohibited by law or against public policy, the latter can exercise no powers not expressly conferred on them by their charters. (Bank of Louisville vs. Young, 37 Mo. 398.) In Great Eastern Railway vs. Turner [L. R. 8. Ch. Ap., 152] Lord Chancellor Selborne gave a brief and comprehensive statement of the law applicable to questions of corporate powers. He said, " The company is a mere abstraction of law. All that it does, all that the law imputes to it as its act, must be that which can be legally done within the powers vested in it by law. Consequently an act which is *ultra vires,* and unauthorized, is not an act of the company, in such a

sense, as that the consent of the company to that act can be pleaded." As this case depends upon the interpretation of a national statute we may refer to some of the cases in U. S. Supreme Court to see what view that tribunal has taken of the law construing the powers of corporations.

In the Bank of the U. S. vs. Danbridge (12 Wheat., 64), the rule is stated to be, that, " whatever may be the implied powers of aggregate corporations by the common law, and the modes by which these powers are to be carried into operation, corporations created by statute must depend, both for their powers and the mode of exercising them, upon the construction of the statute itself."

In Head vs. Providence Ins. Co., (2 Cranch. 127), Ch. J. Marshall defines the powers and limitations of statutory corporations with great clearness, as follows : " Without ascribing to this body, which in its corporate capacity is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may be correctly said to be precisely what the incorporating act has made it : to derive all its powers from that act and to be capable of exerting its faculties only in the manner the act authorizes." Judge Strong, now of the Supreme Court of the U. S., in delivering the opinion of the Pennsylvania court, in a case where the national banking law was directly brought in question, said : " The bank is a creature of the act, dependent on it for all its powers, and controlled by all the restrictions which the act imposes." (Venango Nat. Bank vs. Taylor, 56 Penn. St., 15.)

In all the cases where questions have been raised respecting the powers and liabilities of national banks, it has been invariably held, that the banks have only the powers conferred upon them in the act providing for their formation. That from that act they derive their sole authority, and, that they must be strictly governed by it and kept within the line of its limitations. In Wiley vs. The First Nat. Bk. of Bratteboro (47 Vt., 546), it was decided, that the taking of

special deposits, to keep merely for the accommodation of the depositor, was not within the authorized business of the banks organized under the act of congress, and that the cashiers of such banks had no power to bind them on any express contract accompanying, or on any implied contract arising out of, such taking. So, in a recent case in Maryland (Weckler vs. The First Nat. Bk. of Hagerstown, 14 Am. Law Reg., N. S., 609), it was held, that in the act authorizing the incorporation of national banking associations, the kind of banking was limited and defined, and as the act contained no grant of power to engage in bond-brokerage, it was, therefore, prohibited to the banks, and that it was not necessary to the purpose of their existence, or in any sense incidental to the business of banking. It was, accordingly, decided in an action of deceit against a national bank, seeking to recover damages for the alleged fraudulent representations of its tellers made in the sale to the plaintiff of certain railroad bonds, that the business of selling bonds on commission was not within the scope of the powers of national banking associations, and that the bank could not under any circumstances carry it on, and being thus beyond its corporate powers, the defense of *ultra vires* was open to it, and that it was not responsible for any false representations made by its teller by which the plaintiff might have been damaged.

The very question which comes up for adjudication in this case was presented and passed upon in Fowler vs. Scully (72 Penn. St., 456). In that case Fowler, without any previous indebtedness, gave to the First National Bank of Pittsburg a mortgage to secure the bank for notes, &c., thereafter to be discounted for him. Upon a proceeding for foreclosure the court decided that lending money by a national bank on mortgage or real estate security was *ultra vires* and forbidden, and the mortgage was declared to be void.

National banks possess just such powers as the act incorporating them gives to them—no more. They are the creatures of the act, and controlled by all its restrictions and limitations. Express power is given to them to " carry on the business of

banking by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt; by buying and selling exchange, coin and bullion ; by loaning money on personal security ; by obtaining, issuing and circulating notes according to the provisions of the act." Banks are formed and organized for commercial purposes, and not to deal in real estate. Their business is to discount and negotiate promissory notes, drafts, bills of exchange and other evidences of debt, the buying and selling of bills, bullion, and lending of money on personal security. To permit them to loan their money on real estate security would be destructive of their efficiency and defeat the object had in view in their creation. Instead of being agents for purposes of trade, dealing in commercial paper, discounting notes and furnishing the necessary facilities for loans, they would have their capital locked up in landed property, and thus be powerless to carry on the business which induced their organization. These speculations in real estate are also hazardous, and have no legitimate connection with the business of banking; they require the employment of outside parties to look after the land and examine titles and are apt to embark the bank into enterprises which sooner or later will end in insolvency. Congress doubtless had these considerations in view, when it provided that the money should be loaned on personal security. When the mode of personal security was declared and pointed out, that excluded all others, for the maxim *expressio unius est exclusio alterius* must prevail in this case.

But the intention does not rest merely on the provision requiring personal security on loans. Section 5,137 specifies for what purposes national banking associations may purchase hold and convey real estate, and forbids their dealing in that kind of property for any other purposes. They may purchase and hold so much real estate as may be necessary for their immediate accommodation in the transaction of their business; such as may be mortgaged to them in good faith by way of security for debts previously contracted ; such as shall be conveyed to them in satisfaction of debts previously

contracted in the course of their dealings, and such as they shall purchase at sale under judgments, decrees or mortgages held by them, or shall purchase to secure debts already due. These are the specified instances, and the only instances, in which it is permissible for national banking associations to purchase or hold real property. Aside from the real estate necessary for the transaction of their business, they can only acquire that description of property to enable them to secure themselves for debts previously contracted. But in no case can they loan money on the faith of real estate security where the debtor was not previously indebted to them. If they do the security taken is *ultra vires* and void, and may be pleaded by the party as a defense against its enforcement.

The case at bar shows that there were no previous dealings between the plaintiff and the bank; the bank loaned the money and took the deed of trust as security. This it had no power to do, and the judgment of the court below will be affirmed.

All the judges concur, except Judge Vories, who is absent.