SOUTHERN PAC. RY. CO. *v.* ESQUIBEL.

(*Supreme Court of New Mexico. January, 1889.*)

1. **RAILROAD COMPANIES—CONSOLIDATION—TRANSFER OF LAND GRANT AND FRANCHISE.**
Act Cong. March 3, 1871, incorporating the T. & P. R. Co., and granting lands in aid of the construction of its road, authorized it, by section 4, to purchase the land grant and franchise of, and to consolidate with, any railroad company along its route. Section 5 authorized it to make traffic arrangements with other companies. Section 6 provided that the rights, franchises, and property of every description, belonging to the consolidated or purchased companies, should vest in and become the property of the T. & P. Co. *Held*, that said company had no authority to transfer its own land grant and franchises to another company, and retain merely an easement over the right of way.

2. **SAME—POWER TO SELL ROAD.**
The power given by the act to mortgage the lands, etc., for means to construct and operate the road, does not include the power to sell and assign them.

3. **SAME—FORFEITURE OF LAND GRANT—POWER OF CONGRESS.**
The fact that congress had reserved a right to adopt such measures as it might deem necessary to secure the completion of the road upon failure of the company to complete it, does not prevent congress from declaring a forfeiture of the land grant for such failure.

Appeal from district court; HENDERSON, Judge.

*Catron, Thornton & Clancy*, for appellant. *Rynerson & Waldow*, for appellee.

REEVES, J. Upon the trial of the above-entitled cause it was stipulated by the parties that the facts relating thereto were as follows:

*First.* The Southern Pacific Railway Company of New Mexico is a corporation organized under the laws of the territory of New Mexico in the year 1880.

*Second.* The Texas & Pacific Railroad Company is a corporation organized under an act of congress entitled "An act to incorporate the Texas & Pacific Railroad Company, and to aid in the construction of its road, and for other purposes," approved March 3, 1871, and an act of congress entitled "An act supplementary to an act entitled 'An act to incorporate the Texas & Pacific Railroad Company, and to aid in the construction of its road, and for other

purposes,' " approved March 3, 1871,—this last-mentioned act having been approved May 2, 1872,—which said two acts are hereby made a part of the stipulation, copies thereof being attached hereto, marked "Exhibits."

*Third.* The Texas & Pacific Railroad Company accepted said charter of incorporation, and within the time therein provided was organized thereunder.

*Fourth.* Within two years after the passage of said act of March 3, 1871, and in accordance with said two acts, the said Texas & Pacific Railroad Company did designate the general route of the said road as near as might be, and did file a map of the same in the department of the interior at Washington, which said general route so designated corresponded with the line of road constructed as hereinafter stated by the Southern Pacific Railway Company of New Mexico.

*Fifth.* Immediately after the filing of said map the secretary of the interior caused the lands within 40 miles on each side of said designated route within the territories of New Mexico and Arizona, and 20 miles within the state of California, to be withdrawn from pre-emption, private entry, and sale.

*Sixth.* That thereafter the said Texas & Pacific Railroad Company did commence the construction of its road at the eastern terminus thereof, at or near Marshall, in the state of Texas, as described in said act, and did prosecute the same, and have the same completed at or near El Paso, designated as a point on said road by said acts of congress, on or before the 2d day of May, 1882.

*Seventh.* That the Southern Pacific Railway Company of New Mexico, in the years 1880 and 1881, after the organization, constructed a railroad of the character, kind, and description required by said two acts of congress, from the western boundary line of the territory of New Mexico, through the territory of New Mexico, on the said line of the general route of said Texas & Pacific Railroad Company, as designated in and by the said map filed in the department of the interior as aforesaid, to the state line of Texas, on the Rio Grande river, near El Paso, Tex., and connected the same with the said Texas & Pacific Railroad, constructed as aforesaid, at or near El Paso, as aforesaid.

*Eighth.* After the completion of the Southern Pacific Railway to El Paso, the Texas & Pacific Railroad Company claimed and insisted that the same was built upon its right of way under said acts of incorporation, and that the said road thereby became the property of said Texas & Pacific Railroad Company, and thereupon in May, 1881, commenced a suit in the Third judicial district court of the territory of New Mexico against the Southern Pacific Railway Company of New Mexico, to have said road so constructed by the said Southern Pacific Railway Company of New Mexico decreed to be the property of said Texas & Pacific Railroad Company; a copy of the bill of complaint in said cause being hereto attached and made a part of this agreement, as also is a copy of the order made by Hon. WARREN BRISTOL, as judge of said district court, on the filing of said bill of complaint.

*Ninth.* That during the pendency of said suit the said Texas & Pacific Railroad Company definitely fixed the line of its proposed road, under said acts of congress, across the territory of New Mexico, at the center of the road-bed of the said road constructed as aforesaid by the Southern Pacific Railway Company of New Mexico, in the manner so required by law.

*Tenth.* Owing to doubts and uncertainties as to the result of said legislation, and for reasons therein stated, an agreement to compromise the same was entered into by and between the said Texas & Pacific Railroad Company and the Southern Pacific Railway Company of New Mexico, a copy of which said agreement is filed herewith, and made a part of this stipulation, as evidence in this cause, and that in accordance with said agreement a decree was entered in said cause, a copy of which is filed herewith, and made a part of this stipulation, as evidence in this cause, and also two deeds of conveyance were made

and executed by the said Texas & Pacific Railroad Company to the said Southern Pacific Railway Company of New Mexico, by one of which was conveyed all the right, title, interest, claim, and demand of said Texas & Pacific Railroad Company in and to the right of way, 200 feet wide, from the Arizona line across New Mexico, at or near El Paso, on the line of the road of the Southern Pacific Railway Company of New Mexico, a copy of which said deed is hereto attached, and made a part of the stipulation, as evidence in said cause,—the other deed of conveyance being an assignment and conveyance to the Southern Pacific Railway Company of New Mexico by the Texas & Pacific Railroad Company of the right of way to take materials from the public lands; also grounds for station buildings, workshops, wharves, switches, side tracks, and depot grounds; also the right of franchise of the Texas & Pacific Railroad Company to lay out, locate, construct, finish, maintain, and enjoy a continuous railroad and telegraph line, with appurtenances, from a point on the Rio Grande near El Paso, westward, on the most direct and eligible route near the thirty-second parallel of north latitude, granted to said Texas & Pacific Railroad Company by said acts of congress; and also all the lands granted to said Texas & Pacific Railroad Company by the ninth section of said act of congress approved March 3, 1871, to aid in the construction of the railroad and telegraph line described in the first section of said act; a copy of which said conveyance is attached hereto, and made a part of this stipulation, as evidence in this cause.

*Eleventh.* That the said railroad to be constructed under and in accordance with the said two acts of March 3, 1871, and May 2, 1872, has not been completed in that portion of the state of California between the Colorado river and San Diego.

*Twelfth.* That the said defendant, since the said Texas & Pacific Railroad Company designated its general route and filed a map thereof as aforesaid, and after it had definitely fixed the line of said road across the territory of New Mexico, and after the making of said agreement with the Southern Pacific Railway Company of New Mexico, and entering the said decree, and making, executing, and delivering the said two deeds of conveyance, the said defendant entered upon the land in question, which is a part of one of the odd sections within 40 miles of the line of said road as fixed and designated by the Texas & Pacific Railroad Company as aforesaid, said land in question being situated in the county of Dona Ana, and said defendant occupied and held possession of same, at the time of the commencement of this suit, adverse to plaintiff.

*Thirteenth.* That on February 28, 1885, an act of congress in the following words was passed and approved:

"That all lands granted to the Texas Pacific Railroad Company under the act of congress entitled 'An act to incorporate the Texas Pacific Railroad Company, and to aid in the construction of its road, and for other purposes,' approved March 3, 1871, and acts amendatory thereof or supplemental thereto, be, and they are hereby, declared forfeited, and the whole of said lands restored to the public domain, and made subject to the disposal under the general laws of the United States as though said grant had never been made: provided, that the price of the lands so forfeited and restored shall be the same as heretofore fixed for the even sections within said grant.

"Sec. 2. That the act of March 3d, 1875, entitled 'An act for the relief of settlers within railroad limits,' is hereby repealed." Approved February 28, 1885.

*Fourteenth.* That said defendant, on the 27th day of March, A. D. 1885, filed his homestead entry on the land in question with the register of the United States land-office at Las Cruces, N. M., paid the lawful fees for the same, and received the usual certificate therefor.

After the evidence was closed the plaintiff moved the court to instruct the

jury that under the evidence they should find the defendant guilty, but the court refused the instruction, and to this decision and ruling of the court the plaintiff excepted. Whereupon the court, upon the motion of the defendant, instructed the jury as follows, to-wit: "The court instructs the jury, under the facts stipulated and read in evidence in the case, the plaintiff has not made out such a case as entitles it to recover a verdict against the defendant. The jury will therefore find the defendant not guilty;" to which the plaintiff excepted. Whereupon the jury returned a verdict as follows, to-wit: "We, the jury in the above-entitled cause, do find the defendant not guilty." And thereupon the plaintiff, by its counsel, moved the court for a new trial, for the reason that the verdict was against the law and the evidence in the cause, which the court overruled, and dismissed the suit at the plaintiff's costs; and thereupon the plaintiff excepted, and moves the court to grant it an appeal from the judgment to the supreme court of the territory, which motion was granted, and the plaintiff brings the case into the supreme court by appeal, and assigns for error: (1) The court erred in directing the jury to find the defendant not guilty; (2) the court erred in refusing to give the instructions prayed for by plaintiff to find the defendant guilty; (3) said judgment was rendered in favor of defendant, when it should have been rendered in favor of the plaintiff.

It is contended for the appellant that the grant of the land in question to the Texas & Pacific Railroad Company was a grant *in præsenti*, and had the effect to convey the land to said railroad company; referring to the ninth section of the act of March 3, 1871. This section provides "that, for the purpose of aiding in the construction of the railroad and telegraph line herein provided for, there is hereby granted to the said Texas Pacific Railroad Company, its successors and assigns, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as such line may be adopted by said company, through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad in California, where the same shall not have been sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed. * * *"

The sections designated as granted were incapable of identification until the line of the road should be "definitely fixed." "When the route is established the grant takes effect upon the sections by relation as of the date of the act of congress. In that sense the grant is one *in præsenti*. * * *" *Van Wyck* v. *Knevals*, 106 U. S. 365, 366, 1 Sup. Ct. Rep. 336.

The act intended that the location of the road should be as followed by its construction. *Railroad Co.* v. *Railway Co.*, 97 U. S. 498, and section 13 of the act of congress. This section provided that the president of the company should annually make a report, and file it with the secretary of the interior, which report should be under oath, exhibiting, among other things, the number of miles of road constructed each year, and a description of the lines of road surveyed and fixed upon for construction. Section 12 provided that whenever the company should complete the first and each succeeding section of 20 consecutive miles of railroad, and put it in running order as a first-class road in all its appointments, it should be the duty of the secretary of the interior to cause patents to be issued conveying to the company the number of sections of land opposite to and coterminous with the completed road to which the company should be entitled for each section so completed. Section 18: That the president of the United States, upon the completion of the first section of 20 miles, should appoint one commissioner, whose duty it should be to examine the various sections of 20 miles as they should be completed, and report thereon to him in writing; and if, from said report, he was satisfied that the company had fully completed each section of its road, as in the

act provided, he should direct the secretary of the interior to issue patents to said company for the lands it was entitled to under the act, as fast as each section of the road was completed.

The company, within two years after the passage of the act of March 3, 1871, designated the general route in the department of the interior. The secretary of the interior then caused the land within 40 miles on each side of the designated route within the territory of New Mexico and Arizona, and 20 miles within the state of California, to be withdrawn from pre-emption, private entry, and sale. The map did not show the definite and fixed location of the road, but it was a map showing only the general route of the road.

At this point a statement of the case will be necessary to an understanding of the questions in controversy. The Southern Pacific Railway Company of New Mexico was organized under the laws of the territory in 1880. In the years of 1880 and 1881 this company constructed a railroad across the territory of New Mexico on the line of the road claimed by the Texas & Pacific Railroad Company as its right of way. In its suit brought in 1881 the Texas & Pacific Railroad Company sought a decree divesting all the title which the Southern Pacific Railway Company of New Mexico might have or claim in said road, with its fixtures, etc., and vesting it in the Texas & Pacific Railroad Company, and definitely fixed the line of the proposed road across the territory at the center of the road-bed of the road constructed by the Southern Pacific Railway Company of New Mexico. It is not claimed by the Texas & Pacific Railroad Company that the line of its road in the territory of New Mexico was definitely fixed before the Southern Pacific Railway Company of New Mexico had constructed its road across the territory. The suit was originally between the Texas & Pacific Railroad Company and the Southern Pacific Railway Company of New Mexico. Other companies were made parties in the decree of the court, namely, the Southern Pacific Railroad Company of California, the Los Angeles & San Diego Railroad Company, and the Central Pacific Railroad Company. Still other companies that owned or controlled connecting lines of road were also parties in the agreement and compromise, viz., the Missouri Pacific Railroad Company, the Missouri, Kansas & Texas Railroad Company, and the St. Louis, Iron Mountain & Southern Railroad Company. The suit was compromised on the terms set out in the agreement of the parties and the decree of the court. By the terms of the agreement the Texas & Pacific Railroad Company transferred to the Southern Pacific Railway Company of New Mexico its land grant and franchise to construct a railroad and telegraph line and other rights within the boundaries of the territory of New Mexico; a like transfer to the Southern Pacific Railroad Company of the territory of Arizona of the land grant and franchises included within the boundaries of Arizona; a like transfer to the Los Angeles & San Diego Railroad Company of the land grant and franchises, etc., included within the boundaries of the state of California.

The consideration to the Texas & Pacific Railroad Company for the transfer was the agreement of the Southern Pacific Railway Companies that the road of the Texas & Pacific Railroad Company and the roads of three Southern Pacific Railroad Companies and their connections should be operated and used for all purposes of communication, travel, and transportation, so far as the public and government were concerned, as one continuous through line; the gross earnings to be divided between them in the proportion agreed upon.

The decree of the court contains, among other provisions, the following: "It is expressly considered, ordered, and adjudged that, except as to the rights, privileges, and easements aforesaid, the said Texas & Pacific Railroad Company has no right, title, estate, claim, or demand, at law or in equity, in or to the way, right of way, and railroad, with its appurtenances, constructed by the Southern Pacific Railway Company of New Mexico, in the territory of New Mexico, or in or to the way, right of way, and railroad, with the ap-

purtenances, constructed by the Southern Pacific Railroad Company of Arizona in the territory of Arizona."

The Texas & Pacific Railroad Company had no right to entangle its affairs in these unauthorized transactions upon any assumption that they would be ratified by congress. *Com.* v. *Smith,* 10 Allen, 455; *Matthews* v. *Skinker,* 62 Mo. 329; Boone, Corp. § 243.

The acts of congress contemplated a road for postal, military, and other government services, to be under one management and control, and not an easement and dependency in the system of railways owned and controlled by other and different corporations, as provided by the terms of the agreement and decree of the court. The government was not bound by these proceedings, in which it was not a party; and, although it was stipulated by the parties that the road constructed by the Southern Pacific Railway Company of New Mexico was a road of the character, kind, and description required by the two acts of congress, it did not appear that the president of the United States, or the secretary of the interior, approved it as being completed in accordance with the requirements of those acts. The Texas & Pacific Railroad Company had no right to make the transfer by virtue of the power conferred on the company by the fifth section of the act, to make running arrangements with other railroad companies, nor the power to transfer its own land grant, road, and franchises by authority of the fourth section of the act empowering the company to purchase the land grant and franchise of, and to consolidate with, any railroad company chartered on the route of the Texas & Pacific Railroad Company, but such transfer was contrary to the sixth section of the act, to the effect that the rights, franchises, and property of every description belonging to each of the consolidated or purchased companies should vest in and become absolutely the property of the Texas & Pacific Railroad Company.

It was argued for the appellant that, if the land could be mortgaged for the means to construct, equip, and operate the road, it could be assigned, in the first place, for the same object. The doctrine that a power to mortgage includes a power to sell is not supported by authority of law. A corporation must exercise its powers in the mode prescribed in its charter. The power to procure means to construct the road in question was not a general power; it was a particular power, to be exercised for a specific object. The Texas & Pacific Railroad Company was authorized to issue construction and land bonds, and to execute mortgages to secure the bonds on its land grant and other lands the company might acquire; the proceeds of the sale of the bonds to be applied to the construction, operation, and equipment of the road, and for the purchase, construction, completion, equipment, and operating of the other roads, as contemplated and specified in the acts of congress. The acts require that the bonds and mortgages should contain an extract from the law authorizing them to be issued, and that the mortgages should be filed and recorded in the department of the interior. The appellant was not a mortgagee, nor a purchaser under a mortgage. No mortgage bond was given in aid of the construction of the road. Sections 11, 14, act March 3, 1871, and sections 2, 3, supp. act May 2, 1872.

It is further contended for the appellant that the proviso in the ninth section of the act implied the right to sell or otherwise dispose of the lands. The proviso is to the effect that the lands granted to the company by the ninth section of the act, which should not be sold or otherwise disposed of within three years after the completion of the road, should be subject to settlement and pre-emption like other lands. The proviso was a limitation on the power of the company to hold the lands beyond the period of three years after the completion of the road. How the lands were to be acquired, and to be sold or otherwise disposed of, must be determined from the provisions of the act viewed as a whole. The Texas & Pacific Railroad Company was required by the act of congress to commence the construction of its road at a point at or

near Marshall, in the state of Texas, and at San Diego, in the state of California, and to complete specified portions of the road in the stated times, and to complete the whole line from the point at or near Marshall to the Bay of San Diego within ten years after the passage of the act of March 3, 1871, extended to three years after the passage of the supplementary act of May 2, 1872. Upon compliance with the terms of the act in relation to the times fixed for the completion of the road, it was provided that the land grant should "duly inure" to the company. Section 17, act March 3, 1871; section 5, supp. act May 2, 1872; Id. § 2.

It was admitted on the evidence at the trial that the Texas & Pacific Railway Company commenced the construction of its road at the eastern terminus, near Marshall, and had it completed to El Paso, on or before the 2d day of May, 1882. This portion of the road was not in controversy in the suit. It was further admitted that the road had not been completed in that portion of the state of California between the Colorado river and San Diego.

It is further contended for the appellant that there can be no forfeiture of the lands granted to the Texas & Pacific Railroad Company, because congress had reserved a right, not to forfeit, but to adopt such measures as it might deem necessary and proper to secure the speedy completion of the road upon failure of the company to complete it. The appellant, claiming under the defaulting railroad company, will not be heard to complain that the forfeiture of the land grant, thereby subjecting the lands to the control of congress, was not a proper measure to secure the completion of the road. The proviso was intended for the protection of the government, and not for the benefit of the railroad company. Time was of the essence of the contract. The Texas & Pacific Railroad Company had incurred the forfeiture of its land grant by its failure to complete the road as required by the act of congress. The forfeiture may be asserted by the United States, through the action of congress or by judicial proceedings. *Schulenberg* v. *Harriman,* 21 Wall. 44; *Land Co.* v. *Courtright,* Id. 311; *Van Wyck* v. *Knevals,* 106 U. S. 368, 369, 1 Sup. Ct. Rep. 336. The appellant had no standing in court. The judgment is affirmed.

LONG, C. J., and BRINKER, J., concur.