[No. 259.    January 15, 1889.]

# SOUTHERN PACIFIC RAILWAY COMPANY OF NEW MEXICO, Appellant, v. TEOFILO ESQUIBEL, Appellee.

CORPORATIONS—RAILROAD—LAND GRANT WITH RESERVATIONS AND CONDITIONS—CONSTRUCTION OF GRANT.—A grant of public lands by congress to a railroad company, with certain reservations and on certain conditions, is a grant in praesenti only in the sense that it takes effect by relation as of the date of the act of congress, on performance of the conditions imposed.

ID.—LAND GRANT TO RAILROAD—POWER TO MORTGAGE, PURCHASE, AND CONSOLIDATE WITH ANOTHER COMPANY—LIMITATION OF POWERS.—A railroad company incorporated under an act of congress, granting it certain lands, with power to mortgage, in aid of the construction and operation of its road, and authorizing it to purchase the land grant and franchises of and consolidate with any other road along its route, provided the rights, franchises, and property of every description, of such other road shall vest in, and become the property of, said railroad, is not authorized thereby to transfer its own land grant and franchises to another company, and retain merely an easement over the right of way. Nor can a power to sell its lands be implied from the power to mortgage them for means to construct and operate its road.

ID.—LIMITATION OF GRANT—FORFEITURE.—Where, in such act, it is further provided, that the lands granted such company, which shall not be sold or otherwise disposed of within three years after the completion of its road, shall be subject to settlement and preemption like other public lands, such proviso is a limitation on the power of the company to hold the lands beyond that time; and a failure of the company to comply with the conditions prescribed operates as a forfeiture of the grant; and a plaintiff claiming under the defaulting company will not be heard to complain, that the forfeiture, subjecting the land to the control of congress, was not a proper measure to secure the completion of the road.

APPEAL, from a judgment in favor of defendant, from the Third Judicial District Court, Dona Ana county. Judgment affirmed.

The facts are stated in the opinion of the court.

CATRON, THORNTON & CLANCY, and S. B. AXTELL for appellant.

The grant of the land in question to the Texas & Pacific Railway Company was a grant in praesenti, and had the effect to convey the land to said company. Schulenburg v. Harriman, 21 Wall. 44; Tucker v. Ferguson, 22 Id. 527; U. S. v. Leavenworth R'y Co., 92 U. S. 745; Grinnell v. R'y Co., 103 U. S. 739; Opinion of Att'y Gen. Brewster, June 13, 1882; Rutherford v. Green's Heirs, 2 Whea. 196; M., K. & T. R'y Co. v. K. P. R'y Co., 97 U. S. 491; L., L. &. G. R'y Co. v. U. S., 92 U. S. 733; Northern Pac. R'y Co. v. Majors, 5 Mon. 121.

A grant of land may be made by law as well as by patent issued pursuant to law, and such grant vests an indefeasible title. Fletcher v. Peck, 6 Cranch, 87; Strother v. Lucas, 12 Pet. 454; Wilkinson v. Leland, 2 Id. 627 (8 Curtis Ed. 238); 3 Wash. Real Prop. [4 Ed.], 193, 194; Grignon's Lessee v. Astor, 2 How. 319, 9 Cranch, 43.

If the land can be identified, the grant conveys such title as will support ejectment. N. P. R'y Co. v. Majors, 5 Mon. 121; Chouteau v. Eckhart, 2 How. 344.

The grant is in praesenti to said railway company, "its successors and assigns," and is capable of transfer, subject, possibly, to the reserved rights of congress in case of a failure to complete the road in ten years from May 2, 1872, "to adopt such measures as it may deem necessary and proper to secure its speedy completion." 7 Wash. Real Prop., chap. 14, p. 24; Taylor v. Sutton, 15 Ga. 103; Shattuck v. Hastings, 99 Mass.; Williams on Real Prop. 145.

The power to mortgage includes the power to sell, subject, possibly, to the right of congress to adopt

measures to secure the completion of the road, on a failure to complete by the company or purchaser within ten years. Kennedy v. S. P. & P. R'y Co., 2 Dill. 448; Grinnell v. R'y Co., 103 U. S. 739.

It is not declared in the act of incorporation of the Texas & Pacific Railway Company, as in many others, that the grant is made upon condition, or that it can be forfeited, or that the lands shall revert in case of non-performance of certain conditions. M., K. & T. R'y Co. v. Kansas Pac. R'y Co., 97 U. S. 497.

If there is any condition in this grant, it is a condition subsequent, and such conditions are construed more favorably to the grantee, and are not favored. 4 Kent Com. 129; Davis v. Gray, 16 Wall. 230; Woodworth v. Payne, 74 N. Y. 199; Emerson v. Simpson, 43 N. H. 477; Laberer v. Carleton, 53 Me. 212; Hooper v. Cummings, 45 Id. 365; Thompson v. Thompson, 9 Ind. 323; P., W. & B. R'y Co. v. Howard, 13 How. 340; Craig v. Weelo, 13 N. Y. 320; Inhabitants of Hadley v. Hadley Mfg. Co., 4 Gray, 145; Southard v. C. P. Co., 2 Dutch. 20.

Such conditions may be performed by any one interested. People of Vermont v. Society, Etc., 2 Paine; Bacon's Abr., tit. Conditions, p. 1; Simonds v. Simonds, 3 Metc. (Mass.) 558; 2 Wash. Real Prop., chap. 14, p. 12; Shep. Touch. 140, 142; Wilson v. Wilson, 38 Me. 18; L. & C. R'y Co. v. Carrington, 2 Bush. 526; Joslyn v. Barlin, 54 Vt. 670.

The road in New Mexico having been completed before the expiration of the ten years, there can be no forfeiture, such completion being practically a compliance with the terms of the act. Thompson v. The People, 23 Wend. 537, 579, 585; Woodworth v. Payne, 74 N. Y. 196; Mead v. Bullard, 7 Wall. 290; Wilson v. Galt, 18 Ill. 431.

Supplemental brief of S. B. Axtell, and Catron, Thornton & Clancy for appellant.

If the grant be a conveyance, which it certainly was, a patent was not essential, although it would be a great convenience as a conclusive and unimpeachable evidence of the title. In addition to the authorities cited in our first brief on this point, special attention is called to the two late cases of Van Wyck v. Knevals, 106 U. S. 364, and Southern Pacific R'y Co. v. Dull, 10 Sawy. 507.

The power to amalgamate carries the power to sell the road and franchises. Branch v. Jesup, 106 U. S. 468.

The courts are more liberal now than formerly in construing the powers of railroad corporations, to accomplish the general scope and objects of their creation. Dumpfel v. O. & M. R'y Co., 9 Bis. 127. See, also, Sinking Fund Cases, 99 U. S. 720; Shields v. Ohio, 95 U. S. 324.

Rynerson & Wade for appellee.

The intent of congress should not be defeated by applying to the grant the rules of the common law, which are properly applicable only to transfers between private persons. The rules of the common law must yield to the legislative will. M., K. &. T. R'y Co. v. K. P. R'y Co., 7 Otto, 496.

All public grants are to be construed strictly in favor of the public, and nothing passes by a grant but what is granted in clear and explicit terms. Charles River Bridge v. Warren Bridge, 11 Pet. 544; Rice v. Railroad Co., 1 Black, 380; Mills et al. v. St. Clair County, 8 How. 581; Richmond R'y v. R. R., 13 Id. 81; Comm. v. Erie & C. R'y Co., 27 Pa. St. 339; Dubuque & C. R'y. v. Litchfield, 23 How. 66–68; U. S. v. Arredondo, 6 Pet. 691.

All acts and parts of acts in pari materia must be construed together to correctly determine the legislative will.   1 Kent Com. 462; Rice v. Railroad, 1 Black, 379.   The present case comes clearly within the decision of the supreme court of the United States in the last mentioned case.

A patent is the instrument by which the government passes its fee, and when a patent is provided for, as in this case, it is clear that congress did not intend the title to pass by any words of present grant in the act.

The government may legislate so as to make the issuing of a patent necessary to convey the title in full.   Boatner v. Ventress, 8 Martin (U. S.) 644; 20 Am. Dec. 270; Roads v. Symmens, 1 Ohio, 281; 13 Am. Dec. 621.

That section 9 makes the grant to the Texas & Pacific Railroad Company "its successors and assigns" makes no difference.   These words simply designate the estate which the grantee would acquire upon compliance with the conditions of the grant.   13 Opinions of Att'ys Gen.; U. S. v. Childers, 8 Sawy. 174.

A court of equity might relieve in a proper proceeding, from the consequences of a merely technical and insubstantial breach of condition.   But such relief can not be had in a common law action.   Wash. Real Prop. 20; Warner v. Bennet, 31 Conn. 478; 4 Kent, 131.

A vicarious performance is not sufficient in the case of a grant of this kind.   The terms of the act clearly contemplate that the road should be built by a competitive line.   See Prohibition, sec. 4, Original Act; 13 Opinions Att'ys Gen., supra.

Where the condition of a grant is express there is no need of reserving a right of entry for a breach thereof to enable the grantor to avail himself of it. 2 Wash. Real Prop. 16; Jackson v. Allen, 3 Cow. 220;

Gray v. Blanchard, 8 Pick. 284; Osgood v. Abbott, 58 Me. 73-79; Wegg v. Wegg, 1 Atk. 383.

In the case of a public grant, the mode of asserting or resuming the forfeited grant is subject to the legislative authority of the government. U. S. v. Repentigny, 5. Wall. 211-268; Finch v. Risely, Popham, 53; Schulemburg v. Harriman, 21 Wall. 44; Fairfax v. Hunter, 7 Cranch, 603, et seq.; Smith v. Maryland, 6 Id. 286.

An action of ejectment will not lie until patents are obtained.    Hooper v. Schumer, 23 How. 235; Singleton v. Touchard, 1 Black, 342; Fern v. Holms, 21 How. 482; Carpenter v. Montgomery, 13 Wall. 480; Polk v. Wendall, 5 Whea. 293; Stoddard v. Chambers, 2 How. 281; Patterson v. Winn, 11 Whea. 380; Gilmer v. Pointdexter, 10 How. 257.

If there has been a compliance with the terms and conditions of the grant, as the plaintiffs claim, and they are entitled to the benefit of the grant, they should, before undertaking to eject the defendant, secure from the government patents to the land.    Marbury v. Madison, 1 Cranch; Ellis v. Day, 4 Conn. 95.

It is a well settled principle that, in the absence of express legislative authority, a corporation organized for the public service can not turn over to another the means by which such service is to be effected.  Comm'rs. v. Smith, 10 Allen, 448; East Boston v. Hubbard, 10 Id. 459; Richardson v. Sibley, 11 Id. 65; Middlesex, Etc. v. Boston, 115 Mass. 347; Pierce v. Emery, 32 N. H. 504; Goe v. Columbus, Etc., 10 Ohio St. 372; 2 Redf. R'ys, Vol. 1, p. 480, sec. 235; Steiner's Appeal, 27 Pa. St. 314; Hall v. Trustees, Etc., 2 Redf. R'ys, 465, and notes; Susq. C. Company v. Buchanan, 9 W. & S. 28; York, Etc., R'y Co. v. Winans, 17 How. 38.

Public powers, franchises, and duties, like those resting on the Texas & Pacific Railroad Company by

its charter, are inalienable.    Thomas v. R'y Co., 101
U. S. 71; York, Etc., R'y Co. v. Winans, 17 How. 30.

It has been held by the circuit court of the United
States that any attempt on the part of a railroad com-
pany to lease, transfer, assign, or abdicate its duties is
ultra vires and void.    W. U. Tel. Co. v. U. P. R'y Co.,
3 Fed. Rep. 1.

REEVES, J.—Upon the trial of the above entitled
cause it was stipulated by the parties that the facts re-
lating thereto were as follows:

First.    The Southern Pacific Railway Company
of New Mexico is a corporation organized under the
laws of the territory of New Mexico in the year 1880.

Second.    The Texas & Pacific Railroad Company
is a corporation organized under an act of congress
entitled, "An act to incorporate the Texas & Pacific
Railroad Company, and to aid in the construction of its
road, and for other purposes," approved March 3, 1871,
and an act of said congress entitled, "An act supple-
mentary to an act entitled, 'An act to incorporate the
Texas & Pacific Railroad Company, and to aid in the
construction of its road, and for other purposes,' "
approved March 3, 1871,—this last mentioned act
having been approved May 2, 1872,—which said two
acts are hereby made a part of the stipulation, copies
hereof being attached hereto, marked "Exhibits."

Third.    The Texas & Pacific Railroad Company
accepted said charter of incorporation, and within the
time therein provided was organized thereunder.

Fourth.    Within two years after the passage of
said act of March 3, 1871, and in accordance with said
two acts, the said Texas & Pacific Railroad Company
did designate the general route of the said road as near
as might be, and did file a map of the same in the de-
partment of the interior at Washington, which said
general route so designated corresponded with the line

of road constructed as hereinafter stated by the Southern Pacific Railroad Company of New Mexico.

Fifth. Immediately after the filing of said map the secretary of the interior caused the lands within forty miles on each side of said designated route within the territories of New Mexico and Arizona, and twenty miles within the state of California, to be withdrawn from preemption, private entry, and sale.

Sixth. That thereafter the said Texas & Pacific Railroad Company did commence the construction of its said road at the eastern terminus thereof, at or near Marshall, in the state of Texas, as described in said act, and did prosecute the same, and have the same completed at or near El Paso, designated as a point on said road by said acts of congress, on or before the second day of May, 1882.

Seventh. That the Southern Pacific Railroad Company of New Mexico, in the years 1880 and 1881, after the organization, constructed a railroad of the character, kind, and description required by said two acts of congress, from the western boundary line of the territory of New Mexico, through the territory of New Mexico, on the said line of the general route of said Texas & Pacific Railroad Company, as designated in and by the said map filed in the department of the interior as aforesaid, to the state line of Texas, on the Rio Grande river, near El Paso, Texas, and connected the same with the said Texas & Pacific Railroad, constructed as aforesaid, at or near El Paso, as aforesaid.

Eighth. After the completion of the Southern Pacific Railroad to El Paso, the Texas & Pacific Railroad Company claimed and insisted that the same was built upon its right of way under said acts of incorporation, and that the said road thereby became the property of said Texas & Pacific Railroad Company, and thereupon in May, 1881, commenced a suit in the Third judicial district court of the territory of New

Mexico against the Southern Pacific Railroad Company of New Mexico, to have said road so constructed by the said Southern Pacific Railroad Company of New Mexico decreed to be the property of said Texas & Pacific Railroad Company; a copy of the bill of complaint in said cause being hereto attached and made a part of this agreement, as also is a copy of the order made by Hon. Warren Bristol, as judge of said district court, on the filing of said bill of complaint.

Ninth.    That during the pendency of said suit the said Texas & Pacific Railroad Company definitely fixed the line of its proposed road, under said acts of congress, across the territory of New Mexico, at the center of the roadbed of the said road constructed as aforesaid by the Southern Pacific Railroad Company of New Mexico, in the manner as required by law.

Tenth.    Owing to doubts and uncertainties as to the result of said legislation, and for reasons therein stated, an agreement to compromise the same was entered into by and between the said Texas & Pacific Railroad Company and the Southern Pacific Railroad Company of New Mexico, a copy of which said agreement is filed herewith, and made a part of this stipulation, as evidence in this cause, and that in accordance with said agreement a decree was entered in said cause, a copy of which is filed herewith, and made a part of this stipulation, as evidence in this cause, and also two deeds of conveyance were made and executed by the said Texas & Pacific Railroad Company to the said Southern Pacific Railroad Company of New Mexico, by one of which was conveyed all the right, title, interest, claim, and demand of said Texas & Pacific Railroad Company in and to the right of way, two hundred feet wide, from the Arizona line across New Mexico, at or near El Paso, on the line of the road of the Southern Pacific Railroad Company of New Mexico, a copy of which said deed is hereto attached,

and made a part of the stipulation, as evidence in said cause,—the other deed of conveyance being an assignment and conveyance to the Southern Pacific Railroad Company of New Mexico by the Texas & Pacific Railroad Company of the right of way to take materials from the public lands; also grounds for station buildings, workshops, wharves, switches, side tracks, and depot grounds; also the right of franchise of the Texas & Pacific Railroad Company to lay out, locate, construct, finish, maintain, and enjoy a continuous railroad and telegraph line, with appurtenances, from a point on the Rio Grande near El Paso, westward, on the most direct and eligible route near the thirty-second parallel of north latitude, granted to said Texas & Pacific Railroad Company by said acts of congress; and also all the lands granted to said Texas & Pacific Railroad Company by the ninth section of said act of congress approved March 3, 1871, to aid in the construction of the railroad and telegraph line described in the first section of said act; a copy of which said conveyance is attached hereto, and made a part of this stipulation, as evidence in this cause.

Eleventh. That the said railroad to be constructed under and in accordance with the said two acts of March 3, 1871, and May 2, 1872, has not been completed in that portion of the state of California between the Colorado river and San Diego.

Twelfth. That the said defendant, since the said Texas & Pacific Railroad Company designated its general route and filed a map thereof as aforesaid, and after it had definitely fixed the line of said road across the territory of New Mexico, and after the making of said agreement with the Southern Pacific Railroad Company of New Mexico, and entering the said decree, and making, executing, and delivering the said two deeds of conveyance, the said defendant entered upon the land in question, which is a part of one of the odd

sections within forty miles of the line of said road as fixed and designated by the Texas & Pacific Railroad Company as aforesaid, said land in question being situated in the county of Dona Ana, and said defendant occupied and held possession of same, at the time of the commencement of this suit, adverse to plaintiff.

Thirteenth. That on February 28, 1885, an act of congress in the following words was passed and approved:

"That all lands granted to the Texas & Pacific Railroad Company under the act of congress entitled 'An act to incorporate the Texas & Pacific Railroad Company, and to aid in the construction of its road, and for other purposes,' approved March 3, 1871, and acts amendatory thereof or supplemental thereto, be, and they are hereby, declared forfeited, and the whole of said lands restored to the public domain, and made subject to the disposal under the general laws of the United States as though said grant had never been made; provided, that the price of the lands so forfeited and restored shall be the same as heretofore fixed for the even sections within said grant.

"Sec. 2. That the act of March 3, 1875, entitled 'An act for the relief of settlers within railroad limits,' is hereby repealed." Approved February 28, 1885.

Fourteenth. That said defendant, on the twenty-seventh day of March, A. D. 1885, filed his homestead entry on the land in question with the register of the United States land office at Las Cruces, New Mexico, paid the lawful fees for the same, and received the usual certificate therefor.

After the evidence was closed the plaintiff moved the court to instruct the jury that under the evidence they should find the defendant guilty, but the court refused the instruction, and to this decision and ruling of the court the plaintiff excepted. Whereupon the court, upon the motion of the defendant, instructed

the jury as follows, to wit: "The court instructs the jury, under the facts stipulated and read in evidence in the case, the plaintiff has not made out such a case as entitles it to recover a verdict against the defendant. The jury will, therefore, find the defendant not guilty;" to which the plaintiff excepted. Whereupon the jury returned a verdict as follows, to wit: "We, the jury in the above entitled cause, do find the defendant not guilty." And thereupon the plaintiff, by its counsel, moved the court for a new trial, for the reason that the verdict was against the law and the evidence in the cause, which the court overruled, and dismissed the suit at the plaintiff's costs; and thereupon the plaintiff excepted, and moves the court to grant it an appeal from the judgment to the supreme court of the territory; which motion was granted, and the plaintiff brings the case into the supreme court by appeal, and assigns for error: (1) The court erred in directing the jury to find the defendant not guilty; (2) the court erred in refusing to give the instructions prayed for by plaintiff to find the defendant guilty; (3) said judgment was rendered in favor of defendant, when it should have been rendered in favor of the plaintiff.

It is contended for the appellant that the grant of the land in question to the Texas & Pacific Railroad Company was a grant in praesenti, and had the effect to convey the land to said railroad company; referring to the ninth section of the act of March 3, 1871. This RAILROAD: land section provides "that, for the purpose of grant, construction of. aiding in the construction of the railroad and telegraph line herein provided for, there is hereby granted to the said Texas & Pacific Railroad Company, its successor and assigns, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as such line may be

adopted by said company, through the territories of
the United States, and ten alternate sections of land
per mile on each side of said railroad in California,
where the same shall not have been sold, reserved, or
otherwise disposed of by the United States, and to
which a preemption or homestead claim may not have
attached at the time the line of said road is definitely
fixed.    *    *    *''

The sections designated as granted were incapable
of identification until the line of the road should be
"definitely fixed." "When the route is established the
grant takes effect upon the sections by relation as of
the date of the act of congress. In that sense the
grant is one in praesenti.    *    *    *'' Van Wyck v.
Knevals, 106 U. S. 365, 366.

The act intended that the location of the road should
be followed by its construction. Missouri, Kansas and
Texas Railroad Co. v. Kansas Pacific Railway Co., 97
U. S. R. 498, and section 13 of the act of congress. This
section provided that the president of the company
should annually make a report, and file it with the
secretary of the interior, which report should be under
oath, exhibiting, among other things, the number of
miles of road constructed each year, and a description
of the lines of road surveyed and fixed upon for con-
struction. Section 12 provided that whenever the com-
pany should complete the first and each succeeding
section of twenty consecutive miles of railroad, and
put it in running order as a first-class road in all its
appointments, it should be the duty of the secretary
of the interior to cause patents to be issued conveying
to the company the number of sections of land opposite
to and coterminous with the completed road to which
the company should be entitled for each section so
completed. Section 18: That the president of the
United States, upon the completion of the first section
of twenty miles, should appoint one commissioner,

whose duty it should be to examine the various sections of twenty miles as they should be completed, and report thereon to him in writing; and if, from said report, he was satisfied that said company had fully completed each section of its road, as in the act provided, he should direct the secretary of the interior to issue patents to said company for the lands it was entitled to under the act, as fast as each section of the road was completed.

The company, within two years after the passage of the act of March 3, 1871, designated the general route of its road and file a map of the route in the department of the interior. The secretary of the interior then caused the land within forty miles on each side of the designated route within the territory of New Mexico and Arizona, and twenty miles within the state of California, to be withdrawn from preemption, private entry, and sale. The map did not show the definite and fixed location of the road, but it was a map showing only the general route of the road. See Bill of Complaint of the Texas and Pacific Railway Company and The Southern Pacific Railroad Company of New Mexico, and others, tr. pages 40–59, and arts. 4, 5 and 8, agreed statement of facts, tr. 10–11.

At this point a statement of the case will be necessary to an understanding of the questions in controversy. The Southern Pacific Railroad Company of the territory of New Mexico was organized under the laws of the territory in 1880. In the years of 1880 and 1881 this company constructed a railroad across the territory of New Mexico on the line of the road claimed by the Texas & Pacific Railroad Company as its right of way. In its suit brought in 1881 the Texas & Pacific Railway Company sought a decree divesting all the title which the Southern Pacific Railroad Company of New Mexico might have or claim in said road, with its fixtures, etc., and vesting it in the Texas & Pacific Railway Company,

upon such terms as the court might deem right.   During the pendency of the suit, the Texas & Pacific Railway Company definitely fixed the line of the proposed road across the territory at the center of the roadbed of the road constructed by the Southern Pacific Railroad Company of New Mexico. It is not claimed by the Texas & Pacific Railway Company that the line of its road in the territory of New Mexico was definitely fixed before the Southern Pacific Railroad Company of New Mexico had constructed its road across the territory. The suit was originally between the Texas & Pacific Railway Company and the Southern Pacific Railroad Company of New Mexico. Other companies were made parties in the decree of the court, namely, the Southern Pacific Railroad Company of Arizona, Southern Pacific Railroad of California, the Los Angeles & San Diego Railroad Company, and the Central Pacific Railroad Company. Still other companies that owned or controlled connecting lines of road were also parties in the agreement and compromise, viz., the Missouri Pacific Railway Company, the Missouri, Kansas & Texas Railway Company, and the St. Louis, Iron Mountain .& Southern Railway Company. The suit was compromised on the terms set out in the agreement of the parties and the decree of the court. By the terms of the agreement the Texas & Pacific Railway Company transferred to the Southern Pacific Railroad Company of New Mexico its land grant and franchise to construct a railroad and telegraph line and other rights within the boundaries of the territory of New Mexico; a like transfer to the Southern Pacific Railroad Company of the territory of Arizona of the land grant and franchises included within the boundaries of Arizona; a like transfer to the Los Angeles & San Diego Railroad Company of the land grant and franchises, etc., included within the boundaries of the state of California.

The consideration to the Texas & Pacific Railway

Company for the transfer was the agreement of the Southern Pacific Railway companies that the road of the Texas & Pacific Railway Company and the roads of three Southern Pacific Railroad Companies and their connections should be operated and used for all purposes of communication, travel, and transportation, so far as the public and government were concerned, as one continuous through line; the gross earnings to be divided between them in the proportion agreed upon.

The decree of the court contains, among other provisions, the following, viz.: "* * * It is expressly considered, ordered, and adjudged that, except as to the rights, privileges, and easements aforesaid, the said Texas & Pacific Railway Company has no right, title, estate, claim, or demand, at law or in equity, in or to the way, right of way, and railroad, with its appurtenances, constructed by the Southern Pacific Railroad Company of New Mexico, in the territory of New Mexico, or in or to the way, right of way, and railroad, with its appurtenances, constructed by the Southern Pacific Railroad Company of Arizona in the territory of Arizona."

The Texas & Pacific Railway Company had no right to entangle its affairs in these unauthorized transactions upon any assumption that they would be ratified by congress. Com. v. Smith, 10 Allen, 455; Matthews v. Skinker, 62 Mo. 329; Boone, Corp., sec. 243.

The act of congress contemplated a road for postal, military, and other governmental services, to be under one management and control, and not an easement and dependency in a system of railways owned and controlled by other and different corporations, as provided by the terms of the agreement and decree of the court. The government was not bound by these proceedings, in which it was not a party; and, although it was stipulated by the parties that the road constructed by the Southern Pacific Railroad Company of New

Mexico was a road of the character, kind, and description required by the two acts of congress, it did not appear that the president of the United States, or the secretary of the interior, approved it as being completed in accordance with the requirements of those acts. The Texas & Pacific Railway Company had no right to make the transfer by virtue of the power conferred on the company by the fifth section of the act, to make running arrangements with other railroad companies, nor the power to transfer its own land grant, road, and franchises by authority of the fourth section of the act empowering the company to purchase the land grant and franchise of, and to consolidate with, any railroad company chartered on the route of the Texas & Pacific Railway Company, that such transfer was contrary to the sixth section of the act, to the effect that the rights, franchises, and property of every description belonging to each of the consolidated or purchased companies should vest in and become absolutely the property of the Texas & Pacific Railroad Company.

It was argued for the appellant that, if the land could be mortgaged for the means to construct, equip, and operate the road, it could be assigned, in the first place, for the same object. It has been held that a power to purchase includes a power to take a mortgage.

LAND grant to railroad: limitation of powers. The proposition that a power to mortgage includes a power to sell is not supported by authority of law. A corporation must exercise its powers in the mode prescribed by its charter. The power to procure means to construct the road in question was not a general power; it was a particular power, to be exercised for a specific object. The Texas & Pacific Railway Company was authorized to issue construction and land bonds, and to execute mortgages to secure the bonds on its land grant and other lands the company might acquire; the proceeds of the sale of

the bonds to be applied to the construction, operation,
and equipment of the road, and for the purchase con-
struction, completion, equipment, and operating of
other roads as contemplated and specified in the acts
of congress.    The acts require that the bonds and
mortgages should contain an extract from the law auth-
orizing them to be issued, and that the mortgages should
be filed and recorded in the department of the interior.
The appellant was not a mortgagee, nor a purchaser
under a mortgage.   No mortgage bond was given in
aid of the construction of the road.   Sections 11, 14,
act March 3, 1871, and sections 2, 3, supp. act May
2, 1872.

It is further contended for the appellant that the
proviso in the ninth section of the act implied the right
to sell or otherwise dispose of the lands.   The proviso
is to the effect that the lands granted to the company
by the ninth section of the act, which should not be
sold or otherwise disposed of within three years after the
completion of the road, should be subject to settlement
and preemption like other lands.   The
LIMITATION of
grant: forfeiture.   proviso was a limitation on the power of
the company to hold the lands beyond the period of
three years after the completion of the road.   How the
lands were to be acquired, and to be sold or otherwise
disposed of, must be determined from the provisions of
the act viewed as a whole.   The Texas & Pacific Rail-
road Company was required by the act of congress to
commence the construction of its road at a point at or
near Marshall, in the state of Texas, and at San Diego,
in the state of California, and to complete specified
portions of the road in the stated times, and to complete
the whole line from the point at or near Marshall to
the bay of San Diego within ten years after the passage
of the act of March 3, 1871, extended to ten years
after the passage of the supplementary act of May 2,
1872.   Upon compliance with the terms of the act in

relation to the times fixed for the completion of the road, it was provided that the land grant should "duly inure" to the company. Section 17, act March 3, 1871; section 5, supp. act May 2, 1872; Id., section 2. It was admitted in evidence on the trial that the Texas & Pacific Railway Company commenced the construction of its road at the eastern terminus, near Marshall, and had it completed to El Paso, on or before the second day of May, 1882. This portion of the road was not in controversy in the suit. It was further admitted that the road had not been completed in that portion of the state of California between the Colorado river and San Diego.

It is further contended for the appellant that there can be no forfeiture of the lands granted to the Texas and Pacific Railroad Company, because congress had reserved a right not to forfeit, but to adopt such measures as it might deem necessary and proper to secure the speedy completion of the road upon the failure of the company to complete it. The appellant, claiming under the defaulting railroad company, will not be heard to complain that the forfeiture of the land grant, thereby subjecting the land to the control of congress, was not a proper measure to secure the completion of the road. The proviso was intended for the protection of the government, and not for the benefit of the railroad company. Time was of the essence of the contract. The Texas and Pacific Railroad Company had incurred the forfeiture of its land grant by its failure to complete the road as required by the act of congress. The forfeiture may be asserted by the United States, through the action of congress, or by judicial proceedings. Schulenburg v. Harriman, 21 Wall. 44; Railroad Land Co. v. Courtright, Id. 311; Van Wyck v. Knevals, 106 U. S. 368, 369. The appellant had no standing in court. The judgment is affirmed.

Long, C. J., and Brinker, J., concur.