# 562    SUPREME COURT OF MISSOURI,

THE STATE *ex informatione* CROW, *Attorney-General,* v. LINCOLN TRUST COMPANY, ETC.

## In Banc, June 14, 1898.

1. **Trust Companies**: GENERAL DEPOSITS: BANKING BUSINESS: INTEREST ON DEPOSITS. A trust company, under the laws of Missouri, can not receive moneys by way of general deposits and pay them out on demand on the check of the depositor, in such a way as to thereby establish the relation of debtor and creditor between such company and the depositors. Such company can not receive money in exchange for its credit, in the way a bank does, thereby establishing the relation of debtor and creditor. It can receive money on deposit by paying interest thereon, and such deposit may be payable on demand, or at such time as may be agreed upon, and on checks or written orders or otherwise as may be most convenient. But it has no authority to operate a general deposit account and receive money without paying interest thereon. No corporation organized under the laws of this State except a bank has authority to receive moneys on general deposit and pay them out on checks on demand.

2. **Corporations**: POWERS: TRUST COMPANIES. Corporations can exercise only such powers as are expressly conferred on them by the statute in which are to be found their charter rights and such implied powers as must result from the statutory charter by necessary implication, regard being had for the object and purpose of the corporation. And if there be any uncertainty or doubt as to the terms of the charter they must be resolved in favor of the public. So that a corporation organized as a trust company can not consistently establish the relation of debtor and creditor by receiving moneys as general deposits.

3. ———: ———: ENUMERATED POWERS. Where the powers conferred upon a corporation are expressly enumerated in the statute, this fact implies the exclusion of all other powers not so enumerated.

4. ———: ———: ———: TRUST COMPANIES: "USUAL POWERS." So that the words in a statute that trust companies are "generally to have and exercise such powers as are usually had and exercised by trust companies" can not be held to give such companies authority to receive money as a general deposit, without paying interest thereon, such statute enumerating numerous specific powers that may be exercised by such companies and this enumeration excluding all powers not fairly implied therein.

5. ———: ———: ———: ———: ———: CONNECTION IN STATUTE. Where the words of a statute authorizing trust companies "generally to have and exercise such powers as are usually had and exercised by trust companies" are embraced in the same sentence and immediately follow words giving express power to such companies to accept from and execute trusts for married women in respect to their separate property, it will be held that such general words mean the exercise of such powers as are usually exercised by trust companies in the management of the separate property of married women, and do not mean that they are to exercise such general powers as trust companies in other States or countries may exercise.

6. **Trust Companies**: CHECKS. Checks, strictly speaking, must be drawn on a bank or banker. But if a trust company is authorized by law to do a banking business, it may use checks, or employ any method to draw out general deposits it may deem best comports with the order of its business.

7. **Corporations**: IRREGULARITY OF INCORPORATION: WAIVER. The recognition by legislative action of a corporation operates as a waiver by the State of any irregularity in its incorporation.

8. ———: RECOGNITION OF POWERS NOT GRANTED. But a mere recognition by the legislature of powers not expressly granted to corporations, does not have the effect of creating authority in them to exercise such powers.

9. ———: STATUTE: AMENDMENT BY IMPLICATION. A statute may be repealed by implication, but it can not be amended except in pursuance of the method prescribed by the Constitution.

10. ———: ———: RECOGNITION OF POWERS NOT GRANTED: ESTOPPEL. The State can be estopped only by legislative enactment, resolution, grant, or by the acts of its authorized agent. And before it can be claimed that the State is estopped to deny, because of legislative enactment and recognition, that trust companies can receive money on general deposit and otherwise exercise the powers of a bank, it must appear not only that the provisions of such legislative acts are inconsistent with the State's assertion that trust companies do not have such power, but also that the trust companies acted on such provisions, and received such general deposits relying on those provisions as having conferred on them the authority to do so.

11. **Trust Companies**: BILLS OF EXCHANGE. Trust companies under the statute have the power to buy and sell bills of exchange.

12. ———: JUDGMENT: OUSTER. In this case where defendant trust companies seem to have been acting in good faith, no judgment of ouster is entered from such franchises as are legally possessed by them, but judgment of ouster from the exercise of the franchises not granted to them.

*Quo Warranto.*

WRIT OF OUSTER GRANTED.

*G. A. Finkelnburg* for respondent Union Trust Company; *Boyle, Priest & Lehmann* and *J. E. Mc-Keighan* for respondent Mississippi Valley Trust Company; *F. N. Judson, Fisse & Kortjohn* and *Lubke & Muench* for respondent Lincoln Trust Company; and *Stewart, Cunningham & Eliot* for respondent St. Louis Trust Company.

(1) The fundamental question is: Whether trust companies may receive money *in mutuum.* By the letter of the statutes they are empowered to receive money in exchange for their credit, thereby establishing the relation of debtor and creditor. The right to engage in this relation being established it follows necessarily they may make any contract pertaining to that relation and adopt any mechanism in carrying out the terms of their implied or express contract they may determine upon which does not contravene some positive law or rule of public policy. Section 2839, R. S. 1889, as amended by the act of April 18, 1891, p. 99; *People v. Binghamton Trust Co.,* 139 N. Y. 185; *Bank v. New York,* 121 U. S. 138. *First.* Where a grant of power is given, all the means necessary to effectuate that power pass as incidents of the grant. *State v. Walbridge,* 119 Mo. 383; *State v. Laclede Gas Co.,* 102 Mo. 485; 1 Morawetz on Corp., sec. 320. *Second.* When trust companies are empowered to receive money from the public, to allow interest thereon, and to invest such moneys, then these corporations are also empowered to adopt the ordinary methods and forms which are adapted to the carrying on of such a business. *Hen-r.ing v. Ins. Co.,* 47 Mo. 425; Morawetz, secs. 336, 326;

*Railroad v. Union Steamboat Co.*, 107 U. S. 98; *Wendall v. State*, 62 Wis. 304. (2) The foregoing construction of the first clause of the act is confirmed by the language of the fifth clause, "and generally to have and exercise such powers as are usually had and exercised by trust companies." This language is to be construed, notwithstanding its collocation in the fifth clause of the section, as applicable to all the powers granted. Any other construction is unmeaning, and this, as every other statute, must be so construed, as, if possible, to give effect to all its clauses. Black on Interp. of Laws, p. 460; Sutherland on Stat. Cons., sec. 268; 23 Am. and Eng. Ency. of Law, 369. Punctuation is not a part of the statute. *Doe v. Martin*, 4 Term Rep. 65; *Hammock v. Land & Trust Co.*, 105 U. S. 84; 23 Am. and Eng. Ency. of Law, 334; *U. S. v. Lacher*, 134 U. S. 624. So the collocation of clauses will be disregarded when necessary to give effect to the true legislative intent. *Waters v. Campbell*, 4 Sawyer, 121; *State ex rel. v. Turnpike Co.*, 16 Ohio St. 319; *Matthews v. Comm.*, 18 Grat. 989. This construction is confirmed by a comparison of the Missouri statute with the charter of the Central Trust Company of New York, from which the Missouri statute was obviously taken. Trust companies were well known in the commercial world at the time of the enactment of the Missouri statute, and the "powers usually had and exercised" included that of receiving deposits with the relation of debtor and creditor created thereby. *Bank v. New York*, 121 U. S. 138; *People v. Binghamton Trust Co.*, 139 N. Y. 185; *In re Solicitor's Trust Co.*, 3 Pa. Sup. Ct. 244. (3) The various acts of the legislature, passed since the adoption of the first trust company law of 1885, have not only construed that law so as to include the right to take deposits payable at sight or on demand, but these subsequent

acts in themselves amount to a grant of the right to receive such deposits irrespective of the terms of the original law on the subject. *People v. Manhattan Bank*, 9 Wend. 351; *Society v. Pawlett*, 4 Pet. 480; *Bow v. Allentown*, 34 N. H. 351; *People v. Perrin*, 56 Cal. 345; *State v: Talbot*, 123 Mo. 69; Sutherland on Stat. Cons., sec. 311. The recognition by legislative action of the right to exercise certain powers, although not originally granted, operates as a waiver by the State of its right to object to the exercise of such powers. Spelling on Ext. Relief (Title Quo Warranto), sec. 1862; Morawetz on Corp., sec. 20; Cook on Stockholders, sec. 636; *Bank v. State*, 6 Smed. & M. 622; *Mead v. Railroad*, 45 Conn. 218; *Poor's School v. Canal Co.*, 12 Ohio, 205; *Koch v. Railroad*, 75 Md. 22; *McAuley v. Railroad*, 83 Ill. 352; *Small v. Chicago*, 133 Ill. 413; *Railroad v. Railroad*, 22 Mo. App. 69; *Bashaw v. Dressel*, 34 Md. 503; *Coal Co. v. Canal Co.*, 7 Blatchf. 391; *People v. Ottawa Co.*, 115 Ill. 281; *Railroad v. Oregonian Navigation Co.*, 23 Fed. Rep. 232. (4) The State of Missouri, having through its legislature repeatedly recognized and affirmed the right of trust companies to receive deposits subject to check at sight or on demand, is now estopped from proceeding against these respondents for· exercising that right. *U. S. v. Road Co.*, 54 Fed. Rep. 811; *Comm. v. Pejepscut Props.*, 10 Mass. 155; *Comm. v. Andre,* 3 Pick. 224; *People v. Bank,* 9 Wend. 354; *People v. Perrin*, 56 Cal. 345; *State v. Westport*, 116 Mo. 582; Bishop on Cont., sec. 310.

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *W. W. Graves* for informant.

(1) Respondents start with the proposition conceded that a trust company may receive money in the

same manner that a bank may so receive it. And then arguing that because it may receive it as a bank, therefore, a trust company has implied authority to repay it in the same manner that a bank has. But the proposition from which they argue being erroneous, and being disputed, of course we can not concede their argument as correct. Our contention is that a trust company does not receive money in the same manner, and in the same relation that a bank receives it. A trust company receives the money which the depositor places with it as a trust company and not otherwise. This is the only power that is given to such company to receive money. It is not incorporated as a bank, nor authorized as a bank to receive money, but as a trust company. And having received said money as a trust company, the only implied authority that said trust company would have to repay it would be to repay it as a trust company and not as a bank. When a deposit is made in a bank no understanding, no contract, no arrangement, nothing is necessary to authorize the depositor to draw his check on said bank and said bank is by operation of law alone compelled to honor said check. Without this characteristic no institution is a bank; with it, any institution is doing a banking business. 1 Morse on Banks and Banking [3 Ed.], secs. 363, 367 and 376; *Espy v. Bank*, 18 Wall. 620; *Harmanson v. Bain*, 1 Hughes, 188. A check is always drawn on a bank or banker. *Bank v. Bank*, 10 Wall. 604; 1 Morse on Banks and Banking [3 Ed.], sec. 378; 2 Daniels on Neg. Inst. [4 Ed.], secs. 1566 and 1568; *Hawley v. Jette*, 10 Ore. 31; *Coal Co. v. Bowman*, 69 Iowa, 152; *Goodwin v. Bank*, 48 Conn. 550. (2) What is that, then, in this day without which any institution is not a bank, and with which it is a bank? It is the power to receive deposits subject to check at sight and to buy and sell foreign and inland bills of exchange. *Bank v.*

*Earl*, 13 Pet. 594. (3) It being true that the right to receive deposits subject to check and draft at sight and buy and sell foreign and inland bills of exchange is a franchise to be obtained only from the sovereign state, these respondents must show some grant of authority to them. *Bank v. Young*, 37 Mo. 398. Corporate powers are not created by implication. *Railroad v. Canal Comm.*, 21 Pa. St. 22. No act for creating corporations can ever be extended by construction to cases not reasonably covered by its terms. Corporate powers can not be created by implication, or extended by construction. Endlich on Stat. Inter., sec. 6; *Railroad v. Clark*, 53 Mo. 214. Ambiguity or doubt as to corporate power is to be resolved against corporation and in favor of the public. *Carroll v. Campbell*, 108 Mo. 559; *Fanning v. Gregoire*, 16 How. 534; *St. Louis v. Russell*, 9 Mo. 507; *Blair v. Ins. Co.*, 10 Mo. 559; *Ruggles v. Collier*, 43 Mo. 353; *State ex rel. v. Murphy*, 130 Mo. 10. Reasonable doubt in construction is to be resolved adverse to corporation. *Fertilizing Co. v. Hyde Park*, 97 U. S. 659; *Newton v. Comm.*, 100 U. S. 548. If the charter is silent about a corporate power it does not exist. Black on Inter. of Laws, pp. 319, 320; *Coolidge v. Williams*, 4 Mass. 140. (4) The evidence clearly shows that each of the respondents has opened and now keeps a place of business in St. Louis furnished as an ordinary banking-house for receiving deposits payable upon demand. That they have received deposits to be paid upon demand and paid them upon demand. This constitutes them bankers, and their business a banking business. *Curtes v. Leavitt*, 15 N. Y. 56. The relation created between depositor and bank is the relation of debtor and creditor and not the relation of principal and agent, or the relation of trustee and *cestui que trust*. 3 Am and Eng. Ency. of Law [2 Ed.], sec. 7, p. 826. (5) It would be absurd to say that

the legislature intended by the terms of the statute to convey the idea that said trust company is to receive money upon deposit as a bank. The words "special deposits" as used therein are to be taken in the ordinary and usual signification of the words. Morse on Banks and Banking [3 Ed.], sec. 183, defines a special deposit as follows: "A special deposit is where the whole contract is that the thing deposited shall be safely kept, and that identical thing returned to the depositor. And this contract may arise by express agreement, or by the nature of the deposit, as if it were gold, plate, or money, or money and securities locked in a box, or sealed up in a bag or package." *Dawson v. Bank*, 5 Ark. 299; Anderson's Law Dic., p. 496; *People v. Trust Co.*, 139 N. Y. 185. The substance of this last decision is that defendants have a right under the act under which they were organized to receive money in trust, and to contract with reference to the reception thereof, and the repayment of the same. The case of the *Mercantile Bank v. New York*, 121 U. S. 139-162, instead of supporting the proposition that trust companies may receive money on general deposit, the same as a bank, and repay it in the same manner, holds exactly to the contrary. If a trust company is not a bank and does not perform the functions of a bank, as this court says, then it can not carry on lawfully the busines of banking. That is exactly what informant claims in this case. (6) When a corporation derives authority either from a special act of the legislature or by virtue of a general law to prosecute a particular business in a particular way it is as much incapacitated from engaging in any other business as if it had not been incorporated at all. Implied rights of corporation will never be held to authorize it to engage in other business than that for which it was created. Implied rights only arise for the purpose of completing the exercise of business authorized

by express grant. *Bowman Dairy Co. v. Mooney*, 41 Mo. App. 673; *Henning v. Ins. Co.*, 47 Mo. 425. (7) The respondents were organized as trust companies for the purpose of carrying on a trust company business and were not organized as a bank, nor for the purpose of carrying on a banking business. *People v. Ins. Co.*, 8 Am. Dec. 244. (8) The rule is that usage and custom can not be proved to contravene a rule of law. *Southwestern Freight Co. v. Standard*, 44 Mo. 71; *Hooker v. Sage*, 112 N. Y. 530; 100 Am. Dec. 255; *Cramwell v. Ship "Fosdick,"* 15 La. 437; 77 Am. Dec. 109; *U. S. v. Ameady*, 11 Wheat. 492; *Railroad v. Gallehue*, 12 Grat. 655; R. S. 1889, sec. 2763. (9) The right of banking in Missouri since said act restraining and regulating banking is a privilege or immunity subsisting in the hands of persons, as individuals or as corporations, by grant of the legislature. It is a grant or franchise existing only in such companies, associations or individuals as can show such grant. Therefore, even though a local usage could be proven, which was not attempted to be done, such usage could not, however universal, be heard to control a statute law of this State relative to banking. 48 Ohio St. 69; 127 N. Y. 230; Lawson on Usage and Custom, 216; Sutherland on Stat. Cons., 137; *Bank v. Nelson*, 105 Ala. 190; *Wright v. Gardner*, 33 S. W. Rep. 622; *Electric Co. v. Elizabeth*, 36 Atl. Rep. 673; *Cox v. O'Rielly*, 38 Am. Dec. 633; *Coal Co. v. Sanderson*, 94 Pa. St. 302; *Sanderson v. Coal Co.*, 86 Pa. St. 401; *Helme v. Ins. Co.*, 61 Pa. St. 107; *Railroad v. Feagan*, 13 Am. St. Rep. 766; *Wheeler v. Newbold*, 16 N. Y. 393; *Park v. Baker*, 11 Met. 189; *Hinton v. Locke*, 5 Hill, 437. If the above authorities are correct in announcing that custom and usage can not be introduced for the purpose of contravening the express terms of the statutes, then the commissioner did right in excluding the evi-

dence offered by the witnesses from the eastern States to show the ordinary methods and form by which business is carried on by trust companies in said eastern States and to show that trust companies in said eastern States were authorized to receive money as a bank and to pay the same out in the same manner as banks do. If this ruling of the commissioner was correct, then there is no testimony as to what is the custom and habit of those eastern States and the custom in any others, as to the reception of money in the same manner as banks and the paying out of the same in the same manner as banks pay out money. (10) The respondents' final contention is that the later legislative acts by implication give them authority to receive money as a bank, and pay it out in the same way as a bank usually pays money in its dealings with the people. The cases of *State ex rel. v. Talbot*, 123 Mo. 71; and *State ex rel. v. Corkins*, 123 Mo. 56, and other cases, cited by them, do not sustain their contention. Those cases only refer to the irregularities in the incorporation of companies being cured by subsequent recognition of them by the legislature. That question is not in this case. The question here is, do those acts confer upon trust companies authority to do a kind of business they could not do under the original acts—a banking business? We contend no additional powers were conferred by them. (11) The doctrine of waiver, estoppel and legislative recognition as applied to corporations does not authorize a corporation to do unlawful acts, but simply to do legal acts. The doctrine of corporate authority obtained by subsequent legislative recognition and State estoppel, extends only to that class of cases where the franchise or privilege claimed is one which the corporation might lawfully exercise or which might legally have been granted to it by legislative enactment under its charter as originally obtained. Bishop on Cont., p.

310; 86 N. C. 88; 67 Ill. 435; 5 Mason, 425. The doctrine of estoppel as applied to the State proceeds wholly upon the principle that the sovereign has by some act induced someone to do what he would not otherwise have done, and which would result to his injury, if the State should be allowed to claim a forfeiture of the right. 20 Fed. Rep., p. 830. (12) No affirmation, recognition or estoppel on the part of the State will grant additional power to a corporation to exercise a franchise or right, the exercise of which would change the character of the business for which the corporation was organized, when such change of corporate business is prohibited by law. Mo. Const. 1875, art. XII, sec. 7; 64 N. C. 604; 19 Wall. 635; 4 Thompson on Corp., sec. 5671; 25 N. J. Eq. 217; 20 N. J. Eq. 296; R. S. 1889, sec. 2508; *Matthews v. Skinker*, 62 Mo. 329; 56 Pa. St. 15.

BURGESS, J.—This is a *quo warranto* proceeding begun by the Attorney-General against The Lincoln Trust Company, Union Trust Company of St. Louis, St. Louis Trust Company, and the Mississippi Valley Trust Company, all of the city of St. Louis to oust them of their franchises, because of the exercise of powers and privileges not conferred upon them by law.

The trust companies were organized and have been doing business in this State by virtue of article XI, chapter 42, Revised Statutes 1889, and acts amendatory thereof. The Lincoln Trust Company was organized and incorporated on the twelfth day of April, 1894; the St. Louis Trust Company on the ninth day of October, 1889; the Union Trust Company on the seventh day of June, 1890, and the Mississippi Valley Trust Company on the —— day of October, 1890. The *informations* against all the companies are substantially the same, and being practically the same

case the defenses are the same. They have therefore been argued and briefed together as if but one case, and will be disposed of by us in the same way.

The unauthorized and unlawful acts complained of are receiving upon deposit, subject to check and draft at sight, sums of money ranging in amounts from $1 and upwards, and through their officers and agents, opening regular bank accounts, according to the custom and usuages of regularly incorporated banks in this State, with whomsoever of the public that desired to do a banking business with them; and the buying and selling exchange on other banks and bankers in this and other States, and otherwise by checks and drafts and other kinds of negotiable paper usually dealt in and handled by regularly incorporated banks and banking institutions under the laws of the State of Missouri, carrying on through channels of commercial business such a general and regular business, as is carried on under and by virtue of the laws of this State by the banks incorporated under the banking laws of Missouri.

The respondents in their *answers* aver that they were duly and regularly organized and incorporated as trust companies under and in pursuance of the statutes of the State of Missouri relating to trust companies, to wit, article XI, of chapter 42, of the Revised Statutes 1889, and the act amendatory thereof, approved April 18, 1891, contained in the session acts of 1891, at page ninety-nine thereof; and that being so organized and incorporated, they thereby became, by virtue of the said statutes, invested, and have ever since been and are now invested, with all the powers, privileges, rights and franchises conferred by the said statutes, and all subsequent statutes amendatory thereof and supplementary thereto. The answers then admit that since their respective organizations they

have accepted and received and do still accept and receive deposits of money of the following general classes:    *First*, deposits to be held for a specified time and to bear a specified rate of interest; *second*, deposits to be held in trust and to be returned to the depositor; or to be invested in some particular manner for accumulation, and to be returned with the accumulation to the depositor; and indemnity deposits; *third*, savings deposits from $1 upwards under specific regulations upon which they pay interest at the rate of four per cent per annum; *fourth*, general deposits subject to check or demand upon which they pay interest at the rate of two per cent per annum upon all daily balances above $200.    Respondents justify their right to do this character of business by the terms of the statute; the interpretation of it by subsequent legislatures, by usage and custom, and by the uniform practice of trust companies, with respect to such matters.

The answers then aver that in 1887 the legislature amended the trust company statute by adding paragraphs eight and nine to the enumeration of the powers of such companies.    That at the same session it had under consideration an act concerning mutual savings societies, which was passed and approved March 31, 1887.    That section 12 of this act provided that mutual savings societies might keep on hand an available cash fund, not exceeding twenty-five per cent of their total assets.    That it further provided that this cash fund, together with the current receipts over the payments, might be kept on deposit with any trust company organized under the laws of Missouri. That this act of the legislature recognized, construed, and affirmed the right of trust companies under the laws of this State to receive deposits of money, and to hold them subject to the check of the depositors.

The answers further show that at the session of the legislature of 1891, when the Assembly was again considering and amending the statutes relating to the powers of trust companies, it also again considered an amendment to the law authorizing the formation of mutual savings and safe deposit institutions. That it again provided that such corporations shall keep "an available cash fund of not less than fifteen per cent of the whole amount of its assets and the same or any part thereof together with the current receipts over the payments, may be kept . . . . . . . on deposit payable on demand . . . . . . . , with . . . . . . . any trust company incorporated under the laws of this State." The answer contends that this act by express and necessary reference concedes, and recognizes, the right of trust companies to receive money on deposit subject to be drawn against by check or sight or demand draft.

The answers again contend that the legislature conceded, and recognized, the right of trust companies under the powers granted by the statutes of this State to receive deposits of money subject to check or sight or time draft when by an amendment to sections 2760 and 2761, Revised Statutes 1889, it ordained that: "No president, director, manager, cashier or other officer or agent of any . . . . . . trust company . . . . . . . organized and doing business under . . . . . . . any laws of this State shall receive or assent to the reception of deposits. . . . . . . by such trust company . . . . . . . after he shall have knowledge of the fact that it is insolvent or in failing circumstances," and providing that: "In all suits brought for the recovery of the amount of any deposits received or debts so created all officers, agents or managers of any such . . . . . . . trust company . . . . . . . charged with having so assented to the reception of such deposit . . . . . . . may be joined as defendants or pro-

ceeded against severally, and the fact that such . . . . . . .
trust company . . . . . . . was so insolvent or in failing
circumstances at the time of the reception of the deposit
charged to have been so received . . . . . . . shall be
*prima facie* evidence of such knowledge and assent to
such deposit . . . . . . . .''

The answer further contends that the legislature
construed and recognized the statutes of this State as
having conferred upon trust companies the right to
accept deposits of money and hold them subject to the
order of the depositor, on such terms as might be
mutually agreeable, and confirmed this right by repeal-
ing section 3581, Revised Statutes 1889, and enacting
in lieu thereof a new section (Acts 1895, p. 158), which
provided that: ''If the president, vice-president, secre-
tary, treasurer, director, or other agent, of any . . . . . . .
trust company or institution doing business in this
State, shall receive or assent to the reception of any
deposit of money or other valuable thing, in such trust
company or institution . . . after he shall have had
knowledge of the fact that such . . . . . . . trust com-
pany or institution is insolvent or in failing circum-
stances, he shall be deemed guilty of larceny.''

The answers further represent that the legislature,
by an act passed in March, 1895 (Acts 1895, p. 97),
recognized the right of trust companies to receive
deposits of money upon such terms, and subject to such
conditions as the depositors and trust companies might
agree, and so construed the Statute by providing that
the Secretary of State shall annually inspect ''every
. . . . . . . trust company organized under the law of
the State of Missouri which receives deposits; *provided,*
however, that such trust companies as are under the
supervision of the Superintendent of the Insurance
Department, make to him an annual report, and who
file a copy of such annual report with the Secretary of

State and also publish semi-annually in a newspaper a statement of its condition in such form and under oath as is required of banks, then such examination, report and publication shall be in lieu of the examination and report provided for in this act;" and, also, that, in the form of the report required of banks by section 2752, Revised Statutes 1889, must appear, and, in consequence, trust companies subject to this act are required to show, the amount of, *first,* "deposits subject to draft at sight by banks and bankers, $——;" *second,* "deposits subject to draft at sight by individuals and others $——;" *third,* "deposits subject to drafts at given dates, $——."

And the trust companies aver that since the date of their organization, and from thence hitherto, they have taken and received deposits of money subject to sight or time drafts from individuals, banks, and others, upon such terms and rates of interest as were agreed upon, as was the custom and practice of trust companies at and prior to the time of their organization; and that since the passage of the act of the General Assembly entitled, "An act to repeal section 2842, of the Revised Statutes of 1889, and to enact a new section in lieu thereof," approved March 17, 1893, and under and by virtue of the terms of said act, as well as the act before quoted, and also under the act approved March 15, 1897, they have taken and received deposits subject to sight or time draft from individuals, and others upon agreed terms, and have so reported, as required by said acts, to the officer to whom such reports are required to be made. The answers further aver that the General Assembly, by an act approved March 15, 1897, providing for the examination of banks, fund and trust companies, in subjecting such trust companies as receive deposits, to the provisions of said

act and including such trust companies under the term "Banks," construed article XI, chapter 42, Revised Statutes 1889, and the amendments thereto, to confer upon trust companies the right of receiving deposits of money subject to demand orders or drafts, and affirmed and confirmed this right in such trust companies.

The answers further admit that the respondents relying upon the letter of the statute pursuant to which they were organized and the construction put upon it by the legislature, by the several acts hereinbefore referred to, both before and subsequent to their organization and upon the common and universal practice of trust companies not only in this State, but elsewhere, endowed with the same powers as are invested in trust companies under the laws of this State and upon the construction of the laws of this State made by the communities in which trust companies are located and doing business, and by the officers charged with the supervision of the affairs of such companies, have accepted and received, and do now accept and receive, deposits of money as hereinbefore stated.    The answers of the defendants further specifically traverse the several allegations of the information charging that they are willfully, intentionally and unlawfully violating their charters and usurping rights and privileges not granted to them by law in receiving deposits of money subject to check and sight draft, and by buying and selling exchange and by other conduct, all according to the habits and customs of regularly incorporated banks and bankers, doing business under the laws of this State.

In regard to the right to accept deposits of money, the answers affirmatively allege that power to take deposits is expressly given by the statute in the parts already mentioned, and in the general words of the

fifth clause of the statute already set out.   The power to receive money on deposit subject to payment upon check or sight draft, being one of the powers, as the answers aver, that was generally had and exercised by trust companies existing and doing business at the time when the trust company law of this State was enacted, was, it is averred, by force of this general clause, given to and conferred upon trust companies in this State.

As to the allegation that they buy and sell exchange in manner as charged in the information, the answers, in addition to the traverse of this allegation, set up, affirmatively, that the trust companies are authorized under the statute to buy and sell bills of exchange, draw and negotiate drafts, and deal in all kinds of negotiable and non-negotiable paper.   Such dealing in commercial paper is admitted, but they aver that this manner of dealing does not constitute buying and selling exchange according to the custom of banks.   The general averment in the information, to wit, that the defendants have, by checks and drafts or other kinds of negotiable paper usually dealt in and handled by regularly incorporated banks and banking institutions, carried on a general and regular banking business as is carried on by banks incorporated under the laws of this State, is expressly denied.

The respondents also plead in abatement of these several actions, that under the law of 1897 (Acts 1897, page 83) concerning the examination of banks, fund and trust companies, they are exempt from this proceeding until after the Secretary of State, upon an examination or other information, shall discover some irregularity, misconduct or excess of powers and admonish them to desist, and they shall have refused obedience to such monition; and not till then, and not until a certificate to that effect shall be made to the Attorney-General, shall they be subject to a pro-

ceeding of this character; and they aver that they have received no such monition from the Secretary of State, nor has the Secretary of State certified any delinquency or misconduct on their part to the Attorney-General.

To these several answers the Attorney-General filed *replications* generally denying the facts stated in the answers.

The *evidence* shows that the respondents are engaged in the same general business, and with respect to the issues involved in this case in the same business, that is, buying and selling exchange and receiving moneys on deposit, which is paid out on demand, upon the check of the depositor. These facts are admitted by the respective answers of the several respondents, and the evidence adduced only tended to sustain their admissions and to distinguish in a practical way the manner of conducting the business of a purely banking institution from those of a trust company.

The vital question in this case is as to whether trust companies may receive moneys by way of general deposit, thereby establishing the relation of debtor and creditor between such companies and depositors.

The law authorizing the incorporation of trust companies in this State was first enacted in 1885. Session Acts of 1885, page 103. By section 4 of that act corporations created under it are given power: "*First*, to receive moneys in trust, and accumulate the same at such rate of interest as may be obtained or agreed on, or to allow such interest thereon as may be agreed, not exceeding in either case the legal rate; *second*, to accept and execute all such trusts, and perform such duties of every description as may be committed to them by any person or persons whatsoever, or any corporation, or may be committed or transferred to them by order of any of the courts of record

of this State or other States, or of the United States; *third*, to take and accept by grant, assignment, transfer, devise or bequest, and hold any real or personal estate or trusts created in accordance with the laws of this State or other States, or of the United States, and execute such legal trusts in regard to the same, on such terms as may be declared, established, or agreed upon in regard thereto, or to execute or guarantee any bond or bonds required by law to be given in any proceeding in law or equity in any of the courts of this State or other State, or of the United States; *fourth*, to act as agent for the investment of money for other persons, and as agent for persons and corporations for the purpose of issuing, registering, transferring or countersigning the certificates of stock, bonds or other evidence of debt of any corporation, association, municipality, state or public authority, on such terms as may be agreed upon; *fifth*, to accept from and execute trusts for married women, in respect to their separate property, whether real or personal, and act as agents for them in the management of such property, and generally to have and exercise such powers as are usually had and exercised by trust companies; *sixth*, to act as guardian or curator of any infant or insane person, under the appointment of any court of record having jurisdiction of the person or estate of such infant or insane person; *seventh*, to guarantee the fidelity and diligent performance of their duty of persons holding places of public or private trust.''

In 1887 (Sess. Acts 1887, p. 116) said section 4 was amended by adding to the then existing powers that might be exercised by trust companies incorporated under said act the following: ''*Eighth*, to loan money upon real estate and collateral security, and execute and issue its notes and debentures, payable at a future date, and to pledge its mortgages on real

estate and other securities, as security therefor; *ninth*, to buy and sell all kind of government, state, municipal and other bonds, and all kinds of negotiable and non-negotiable paper, stocks and other investment securities." R. S. 1889, sec. 2839.

This section 2839 was again amended in 1891 (See Acts of April 18, 1891, p. 99) so as to read as follows: "Section 2839. Corporations may be created under this article for any one or more of the following purposes: *First*, to receive money in trust, and to accumulate the same at such rate of interest as may be obtained or agreed upon, or to allow such interest thereon as may be agreed, not exceeding in either case the legal rate (and the payment to them or their order of deposits made by minors shall be binding on them; to receive upon deposit for safe keeping personal property of every description; to guarantee special deposits and to own or control a safety vault and rent the boxes therein). *Second*, to accept and execute all such trusts and perform such duties of every description as may be committed to them by any person or persons whatsoever, or any corporation (and act as assignee, receiver, trustee and depositary, and to accept and execute all such trusts and perform such duties of every description) as may be committed or transferred to them by order, judgment or decree of any of the courts of record of this State or other State, or of the United States. *Third*, to take, accept (and hold, by the order, judgment or decree of any court of this State, or of any other State, or of the United States, or by gift, grant, assignment, transfer, devise or bequest of any person or corporation) any real or personal property in trust, and to execute and perform any and all such legal and lawful trusts in regard to the same, upon the terms, conditions, limitations and restrictions which may be declared, imposed, established or agreed upon in and

by such order, judgment, decree, gift, grant, assignment, transfer, devise or bequest, and to execute as principal or surety, and to guarantee against loss any principal or surety upon any bond or bonds required by law to be given in any proceeding in law or equity in any of the courts of this State or other State, or of the United States. *Fourth*, to act as agent or attorney in fact for any person or corporation in the management and control of real or personal property and the sale or conveyance of the same, and for the investment of money, and to act for and represent corporations or persons under power and letters of attorney, and as agents for persons and corporations for the purpose of issuing, registering, transferring or countersigning the certificates of stock, bonds or other evidences of debt of any corporation, association, municipality, state or public authority, on such terms as may be agreed upon. *Fifth*, to accept from and execute trusts for married women in respect to their separate property, whether real or personal, and act as agent for them in the management of such property, *and generally to have and exercise such powers as are usually had and exercised by trust companies*. *Sixth*, to act as executor under last will or as administrator of the estate of any deceased person, or as guardian or curator of any infant, insane person, idiot or habitual drunkard, or trustee for any convict in the penitentiary, under the appointment of any court of record having jurisdiction of the person or estate of such deceased person, infant, insane person, idiot, habitual drunkard or convict. *Seventh*, to guarantee the fidelity and diligent performance of their duty of persons or corporations holding places of public or private trust; to guarantee or become surety on any bond given by any person or corporation, and to reinsure or guarantee any person or corporation against loss or damage by reason of any risk assumed by

insuring the fidelity or diligent performance of duty of any such person or corporation, or by guaranteeing or becoming surety on any bond; to guarantee the principal or interest or both, of any securities of any kind, and to certify and guarantee titles to real estate. *Eighth*, to loan money upon real estate and collateral security, and execute and issue its notes and debentures payable at a future date, and to pledge its mortgages on real estate and other securities as security therefor, which notes and debentures may be issued to an amount not exceeding, in the aggregate, ten times the amount paid up on the capital stock of the company issuing the same, and shall in no case exceed the amount of first mortgages pledged to secure their payment. *Ninth*, to buy and sell all kinds of government, state, municipal and other bonds and all kinds of negotiable and non-negotiable paper, stocks and other investment securities.'' While by this amendment the powers of trust companies were greatly enlarged in several particulars not necessary to mention, their powers to receive moneys on general deposit, and to pay them out on demand on check or sight draft, remain just as they did before this amendment.

It is the contention of respondents that by the letter of the statutes they are empowered to receive money in exchange for their credit, thereby establishing the relation of debtor and creditor.

*People v. Binghamton Trust Co.*, 139 N. Y. 185, was an action by the people of the State by their Attorney-General to recover judgment in their favor, declaring that the defendant was then exercising franchises not conferred upon it by law, and for the amount of the penalty prescribed by statute for carrying on business in violation of section 283, chapter 409, of the Laws of 1882, known as the Banking Law. The Attorney-General conceded that trust companies might receive

deposits of money and pay interest on them, but argued that they could not transact or regulate their business on the general plan, or in the manner usually adopted by savings banks. So that, the only question was with respect to the manner of conducting their business. It was held that the rules in this regard adopted by the trust companies were not such as are or should be confined in their use to savings bank business, but were those which, in view of the powers given to the defendant by the act under which it was organized to receive deposits and make contracts, it was proper for it to make, and that it was not unlawful for it to transact business upon the general plan or in the manner usually adopted by savings banks. In other words, that it might adopt such rules and regulations as to its order of business, as it thought proper not inconsistent with law and public policy. *Bank v. New York*, 121 U. S. 138, was a suit brought by a national bank to enjoin the collection of a tax levied by the State, upon the ground that the law taxing trust companies organized under the laws of that State made a discrimination against national banks which was prohibited by the act of Congress under which it was organized. By the law of that State trust companies are endowed with many of the powers possessed by trust companies incorporated under the laws of this State, and among the rest, "to receive moneys in trust and to accumulate the same at an agreed rate of interest." The court said: "It is evident from this enumeration of powers, that trust companies are not banks in the commercial sense of the word, and do not perform the functions of banks in carrying on the exchange of commerce."

But the question here is, are trust companies authorized by statute to receive money on general deposit, and pay it out on check at sight or on demand?

If they have any such powers it must be found in the statute, for they possess only such express powers as are conferred upon them thereby, and such as are necessarily implied from the language used. In *Matthews v. Skinker*, 62 Mo. 329, it was said: "Corporations have only such powers as are especially given by their charters, or are necessary to carry into effect some specified power. *St. Louis v. Russell*, 9 Mo. 507; *Blair v. Perpetual Ins. Co.*, 10 Mo. 559; *Ruggles v. Collier*, 43 Mo. 353. They must act strictly within the scope of the powers conferred on them by the act calling them into being; and where a grant of power from the legislature is relied on, the mode prescribed in that grant for doing any particular thing must be pursued according to the law creating them. *Railroad v. Marion Co.*, 36 Mo. 294. The distinction between natural · persons and corporations is, that while the former may make any contract not prohibited by law or not against public policy, the latter can exercise no powers not expressly conferred on them by their charters." *Bank v. Young*, 37 Mo. 398. While the *Matthews* case was subsequently overruled by the Supreme Court of the United States (98 U. S. 621) in some respects, its soundness as to the powers of corporations under their charters was not doubted nor has it ever been called in question.

The only words in the statute which have any tendency whatever to sustain respondents' position, are those in the first clause of said section 4 which authorize trust companies to receive moneys and "to allow such interest thereon as may be agreed, not exceeding the legal rate," and those in the fifth clause which authorize them "generally to have and exercise such powers as are usually had and exercised by trust companies." It is quite clear that no express power is conferred upon trust companies by said section to

receive moneys by way of general deposit, nor can any such power be implied from the language quoted from that section. Implied powers must result from the charter by necessary implication, regard being had for the object and purpose of the corporation. And if there be any uncertainty or doubt as to the terms of the charter they must be resolved in favor of the public. In *Minturn v. Larue,* 23 How. 435, the court said: "It is a well settled rule of construction of grants by the legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the objects of the grant. Any ambiguity or doubt arising out of the terms used by the legislature, must be resolved in favor of the public. This principle has been so often applied in the construction of corporate powers that we need not stop to refer to authorities." *Carroll v. Campbell,* 108 Mo. 559; *Charles River Bridge v. Warren Bridge,* 11 Pet. 420; *Mills v. St. Clair Co.,* 8 How. 569. There is nothing in the words used that would justify their extension by implication in favor of the respondents beyond the natural and obvious meaning of the words employed, and these do not support the right asserted. The fact that respondents are incorporated as trust companies seems to be inconsistent with the relation of that of debtor and creditor, and in favor of the relation of trustee and *cestui que trust.*

Moreover, the powers conferred upon respondents are expressly enumerated, which implies the exclusion of all others not enumerated. In *Thomas v. Railroad,* 101 U. S. 71, the court observed: "We take the general doctrine to be in this country, though there may be exceptional cases and some authorities to the

contrary, that the powers of corporations organized under legislative statutes are such and such only as those statutes confer. Conceding the rule applicable to all statutes, that what is fairly implied is as much granted as what is expressed, it remains that the charter of a corporation is the measure of its powers, and that the enumeration of these powers implies the exclusion of all others.''

It can not be implied from the fact that trust companies have the power to receive moneys and to allow such interest thereon as may be agreed not exceeding the legal rate, that they have the power to receive moneys on general deposit, and pay it out on demand. They can go no further than the statute expressly permits. The clause under consideration grants the right to accept money and *allow* interest upon the same. This necessarily authorizes them to create the relation of debtor and creditor as to funds so deposited, but only to that extent. If they can receive money and agree to pay interest thereon, this money may be payable on demand, as well as at such times as may be fixed by agreement, and upon checks or written orders or otherwise as may be most convenient. This is as far as they can go. They have no authority to operate a general deposit account and receive money in any sums whatever upon which no interest is ''allowed'' and pay out such funds upon the depositor's checks. It is enough to say that the legislature has not given such power.

Nor do we think any such power is granted, or that it can be implied from the fact that the statute provides that trust companies are ''generally to have and exercise such powers as are usually had and exercised by trust companies.'' The enumeration of the powers conferred upon trust companies by the statute must be held to exclude all others. *Thomas v. Railroad,*

*supra;* Sutherland on Statutory Construction, secs. 268, 276. Besides, those words are embraced in the same sentence and follow words by which express power is conferred upon trust companies to accept from and execute trusts for married women in respect to their separate property, whether real or personal, and act as agent for them in the management of such property, and clearly mean the exercise of such powers as are usually had and exercised by trust companies with respect to such matters, and none other. "Where there are general words following particular and specific words, the former must be confined to things of the same kind." Sutherland on Statutory Construction, sec. 268.

Moreover, the general power attempted to be conferred is too indefinite and uncertain to confer any special power upon such companies.

In *Railroad v. Canal Comm'rs,* 21 Pa. St. 9, it was said by BLACK, C. J.: "But corporate powers can never be created by implication nor extended by construction. No privilege is granted unless it be expressed in plain and unequivocal words, testifying the intention of the legislature in a manner too plain to be misunderstood. When the State means to clothe a corporate body with a portion of her own sovereignty, and to disarm herself to that extent of the powers which belong to her, it is so easy to say so that we will never believe it to be meant when it is not said; and words of equivocal import are so easily inserted by mistake or fraud, that every consideration of justice and policy requires that they should be treated as nugatory, when they do find their way in the enactments of the legislature. In the construction of a charter, to be in doubt is to be resolved; and every resolution which springs from doubt is against the corporation."

Section 7, article XII, of the Constitution of this State, provides that: "No corporation shall engage in

business, other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized," etc.  See, also, *People ex rel. v. Father Matthew Society*, 41 Mich. 67.  By section 26, article XII, of our Constitution under the title, "Act creating banks, to be submitted to the people," it is provided that:  "No *act* of the General Assembly authorizing or creating corporations or associations with banking powers (except banks of deposit or discount) nor amendments thereto, shall go into effect, or in any manner be enforced, unless the same shall be submitted to a vote of the qualified voters of the State, at the general election next succeeding the passage of the same, and be approved by a majority of the votes cast at such election."  The manifest purpose of this latter constitutional provision was to prevent the incorporation of banks of issue even with the sanction of the legislature, without such an act being first submitted to the people and approved by them.

Section 2743, Revised Statutes, 1889 chapter 42, article VII, entitled "Savings Bank and Fund Companies," is as follows:  "Sec. 2743.  *Who may be Incorcorporated.*—Any five or more persons in any county of this State, who shall have associated themselves by articles of agreement, in writing, as provided by law, for the purpose of establishing a bank of deposit or discount, or of both deposit and discount, may be incorporated under any name or title designating such business."  Section 2836, Revised Statutes, 1889, chapter 42, article XI, entitled "Trust Companies," provides, that "any three or more persons who shall have associated themselves by articles of agreement, in writing, as provided by law, for any of the purposes included under section 2839 of this article, may be incorporated under any name or title designating such business."  In *State v. Reid*, 125 Mo. 51, GANTT, P. J., in speaking of the

incorporation and powers of trust companies under the first subdivision of sections 2839 and 2743, *supra*, and of banks under section 2745, Revised Statutes 1889, said: "We think it obvious that whatever result was attained by the foregoing legislation, it most clearly was not the intention of the legislature that these trust companies should perform the functions of banks of deposit or discount, or banks of deposit and discount. To create a bank, it is absolutely necessary that five persons shall associate before a charter can be obtained, whereas three persons only are required to procure a charter for a trust company. The powers and rights of banks are defined by section 2745, and those of the trust companies by section 2839. Unquestionably some of the powers usually exercised by incorporated banks are conferred by these statutes upon trust companies, but many of the powers and rights of banks are not conferred upon them, and a distinct class of powers are granted to trust companies which banks do not, and are not authorized to, exercise at all. For example, banks have the right to receive money on deposit, and thereby the relation of debtor and creditor is established between the bank and the depositor. Trust companies have no right to receive deposits, but can only receive money in trust, and thereby the relation of trustee and *cestui que trust* is established between the company and the customer. Trust companies have the right to perform various and sundry acts specified in section 2839, none of which can be performed by a bank. Banks are required to furnish to the Secretary of State a statement showing their condition. Secs. 2751 and 2752. No such duty is required of trust companies. The officers of banks are made personally liable for all deposits received in the bank after they have knowledge that the bank is insolvent. No such penalty is imposed upon

the officers of trust companies. From this enumera-
tion of the differences between the two corporations, it
will be seen that they are widely and essentially dis-
tinct and separate. An examination of the authorities
will, we think, demonstrate that the mere fact that a cor-
poration is authorized to exercise some of the functions
of a bank does not, in law and in fact, create a bank
within the meaning of our Constitution and statute.''

It thus seems clear that no corporation other
than a bank organized according to the laws of this
State has the power to receive moneys on general deposit
and pay them out on demand, on check or otherwise.
If, however, the power exists in respondents to receive
moneys on general deposit and to pay them out on de-
mand, then the implied power exists in them to adopt
such methods as they may think best comports with the
order of business as to the way it shall be paid out,
whether that be upon check or otherwise, and this, too,
notwithstanding a check strictly speaking must be drawn
upon a bank or banker. 2 Daniels on Neg. Inst., sec.
1568, p. 598. ''Corporations, when they are not
restrained in any particular manner by their charters,
may adopt all reasonable modes in the execution of their
business which a natural person may adopt in the exer-
cise of similar powers.'' *Henning v. U. S. Ins. Co.*, 47
Mo. 425; Morawetz on Corporations, sec. 336; *Railroad
v. Union Steamboat Co.*, 107 U. S. 98; *Wendel v. State*,
62 Wis. 304.

But it is contended by respondents that the va-
rious acts of the legislature passed since the adoption of
the first trust company law of 1885, have not only con-
strued that law so as to include the right of such com-
panies to take deposits payable at sight or on demand,
but these subsequent acts in themselves amount to a
grant of the right to receive such deposits irrespective
of the terms of the original law on the subject. It is

stated by counsel for respondents in their brief that the acts referred to in substance are as follows:

An act concerning "Mutual Savings Societies," approved March 31, 1887 (see Acts 1887, p. 117), whereby these financial institutions were authorized to deposit their available cash fund with any trust company incorporated under the laws of this State.

An act concerning "Trust Companies," approved April 18, 1891 (see Acts 1891, p. 99), whereby trust companies were authorized to receive deposits from minors, and providing that payments made to them or their order of deposits made by minors should be binding on them.

An act concerning "Savings and Safe Deposit Institutions," approved April 3, 1891 (see Acts 1891, p. 86), whereby these institutions were authorized to keep their cash funds in trust companies "on deposit payable on demand."

An act concerning "Bank Inspection," approved March 22, 1895 (see Acts 1895, p. 97), whereby trust companies "which receive deposits" were placed under the general bank inspection law, and whereby all the requirements concerning banks as to reports, supervision, etc., were extended to trust companies.

An act concerning "Savings Banks and Fund Companies," approved March 9, 1895 (see Acts 1895, p. 119), whereby the officers and directors of trust companies who "receive or assent to the reception of deposits" after they shall have knowledge of the fact that such trust company is insolvent or in failing circumstances, are made subject to individual liability "for such deposits so received" the same as is provided by section 2760, Revised Statutes 1889, in regard to officers of banks and banking institutions.

An act concerning "Offenses against Public and Private Property," approved April 11, 1895 (see Acts

Vol. 144 mo—38

1895, p. 158), whereby the officers and directors of trust companies, like the officers and directors of banks, are made criminally liable and punishable for larceny for receiving or assenting "to the reception of any deposits of money" after having had knowledge of the fact that such trust company is insolvent or in failing circumstances.

An act concerning "Bills of Exchange and Promissory Notes," approved March 18, 1895 (see Acts 1895, p. 47), whereby it was made lawful "for banks, trust companies and other banking institutions" to close their doors for business at 12 o'clock, noon, on each and every Saturday in the year, and providing further that all bills, checks, drafts and notes presentable for acceptance or payment on Saturdays shall be deemed presentable on the business day next succeeding.

An act concerning "Industrial or Prudential Life Insurance Companies," approved March 31, 1897 (see Acts 1897, p. 138), whereby it was provided that such insurance companies might deposit with trust companies a sum not less than $10,000 "to the credit of the general fund of such insurance company."·

An act concerning "Examination of Banks, Fund and Trust Companies," approved March 15, 1897 (see Acts 1897, p. 83), whereby trust companies were placed under the new bank inspection law of Missouri with all the regulations provided for in said act, and whereby it was provided that "trust companies which receive deposits" should be included under the term bank as used in that law.

It is insisted that these several enactments embody a legislative affirmation and recognition of the right of trust companies to receive money on deposit payable at sight or on demand, and that even if no such right had existed under the original law these enactments would in themselves operate to confer the power to receive such deposits.

It must be borne in mind that this proceeding is not for the purpose of ousting respondents of their franchises, because of any imperfection or illegality of their incorporation, but because of the illegal exercise of powers not conferred upon them by law. It is well settled that the recognition by legislative action of a corporation operates as a waiver by the State of any irregularity in its incorporation. *State ex rel. v. Westport,* 116 Mo. 582; *People v. Perrin,* 56 Cal. 345; *Railroad v. Cook,* 29 Ill. 237; *Basshor & Stebbins v. Dressel,* 34 Md. 503; *Railroad v. Barnard,* 31 Barb. 258; *Kanawha Coal Co. v. Kanawha, etc., Coal Co.,* 7 Blatch. (C. C.) 391; *Society v. Town of Pawlet,* 4 Pet. 480; *Bow v. Allenstown,* 34 N. H. 351; Cook on Stock and Stockholders, sec. 636; *Mead v. Railroad,* 45 Conn. 199; *The People ex rel. v. Farnham,* 35 Ill. 562; *Snell v. Chicago,* 133 Ill. 413; *McAuley v. Railroad,* 83 Ill. 348; *Koch v. Railroad,* 75 Md. 222. So a forfeiture of its charter by a corporation, by non-compliance with the terms of a condition contained in its charter, may be waived by the legislature, by subsequent legislative acts, recognizing its continued existence. *The People v. The President of the Manhattan Co.,* 9 Wend. 351; *People ex rel. v. Hydraulic Co.,* 115 Ill. 281; *Doggett v. Walter,* 15 Fla. 355.

But the question here is whether or not the legislature by it several subsequent acts before mentioned by which the power of trust companies to receive moneys on general deposit payable on demand or check is recognized, did thereby ingraft on the statute by implication merely, powers which did not theretofore exist in express terms or by implication. While a statute may be repealed by implication, it can not be amended otherwise than as provided by section 34, article IV, of the State Constitution, and the mere recognition of such powers, did not have the effect to create them.

A further contention is that the State having recognized and affirmed the right of trust companies to receive deposits subject to check at sight or on demand, is now estopped from proceeding against these respondents for exercising that right. In *United States v. Willamette & C. M. Wagon Road Co.*, 54 Fed. Rep. 807, it is said: "While individuals may be estopped by the unauthorized acts of their agents, apparently within the scope of their agency, the sovereign power being the trustee of the people, is rarely, if ever, bound by the acts of its agents; but, while it is true that for the neglect or the illegal or unauthorized acts of its agents the government should not ordinarily be estopped to show the truth, there is good authority based upon sound reasoning, to support the doctrine that where the government has acted by legislative enactment, resolution or grant, or otherwise than through the unauthorized or illegal acts of its agents, and the parties dealing with the government have relied upon the same, and in good faith have so changed their relation to the subject-matter thereof that it would be inequitable to declare such action or grant illegal, the government will be estopped." See, also, *Commonwealth v. Pejepscut Props.*, 10 Mass. 155; *Commonwealth v. Andre*, 3 Pick. 224; *People v. Manhattan Co.*, 9 Wend. 354; *People v. Perrin*, 56 Col. 345; *State ex rel. v. Westport*, 116 Mo. 582; *Opinion of Supreme Court*, 49 Mo. 216; Bishop on Contracts, sec. 310.

It is well settled that the State can only be estopped by legislative enactment, resolution, grant, or by acts of its authorized agents, and we find nothing of that kind in this case. No additional express powers of a general character were conferred upon trust companies by either one of the several acts of the legislature to receive moneys on general deposit, which could only be done by an amendment to the law

authorizing their incorporation; besides all of said acts are with respect to special matters named in the respective acts, and have no reference to the law in regard to trust companies.

Before the State can be estopped it must appear, not only that the provisions of the acts of the legislature, or some of them, are inconsistent with the right herein asserted by the State, but that the right of trust companies to receive moneys from individuals, corporations and business enterprises on general deposit is recognized by such legislation, and that they acted upon such admissions, and in consequence thereof received moneys on general deposit subject to check at sight or on demand; and that it would be an injury to them to permit the State to assume an opposite position. *Taylor and Mason v. Zepp*, 14 Mo. 482; *Dazell v. Odell*, 3 Hill, 219; *Newman v. Hook;* 37 Mo. 207; *Chouteau v. Goddin*, 39 Mo. 250; *Campbell v. Johnson*, 44 Mo. 247; *Bunce, Adm'r, v. Beck*, 46 Mo. 327; *Rice v. Bunce*, 49 Mo. 231. The recognition of the power of respondents by the legislature to receive money on general deposit, even if such were the case, is not sufficient to create an estoppel *in pais*, unless respondents acted upon such recognition. *Monks v. Belden*, 80 Mo. 639; *Acton v. Dooley*, 74 Mo. 63; *Spurlock v. Sproule*, 72 Mo. 503. And it is impossible that respondents could have been mislead and induced to do otherwise than they did do by reason of all or either of said acts. And for these reasons. From the time of their organizations they received moneys on general deposit payable on demand, on check or sight draft, and the only act in question which was passed before that time, and upon which respondents could have possibly relied as conferring upon them the power to receive moneys on general deposit was that of 1887 (Acts 1887, p. 116) by which it is provided that mutual saving societies

may keep on hand an available cash fund, not exceeding twenty-five per cent of their total assets, which together with the current receipts over the payments might be kept on deposit with any trust company organized under the laws of Missouri, and that is with respect to a special fund, from which it could not even be implied that trust companies are authorized to receive moneys on general deposit. But no such power can be implied in favor of respondents in this case. The other acts passed subsequently to the incorporation of respondents are with respect to special matters, and could not in any way have mislead respondents, or induced them to change their positions. Even conceding all that is claimed for these several acts by respondents, that is, that they by implication confer upon them the power to receive moneys on general deposits, as no such power exists in the law with respect to trust companies, it can not be conferred upon them by implication.

In case of *State v. Stebbins*, and others, 1 Stewart, Rep. (Ala.), 299, the claim was made in behalf of a corporation having a special charter that subsequent legislative construction had given said corporation authority to carry on a banking business. But on this point, the court said: "But it is further contended that the act recited under which this indictment was preferred admits that the act of incorporation gave the power, 'as it would seem by construction,' to use banking privileges; and if so the legislature can not abridge that power. It is admitted by the court that when any legal charter has conferred banking or other powers the legislature is incompetent to abridge or repeal them during the validity of the grant; but it is equally clear that an admission by the legislature that a corporation once had a power which was never granted and which

in truth they never had, can not confer such power." This is but an enunciation of the general doctrine.

The record shows that at the time of the issuing the writ in this case respondents were, and have been ever since their organization under their respective charters, receiving moneys upon general deposit payable upon demand on check or sight draft upon which no interest was allowed by agreement, or otherwise, and our conclusion is that in so doing, and to that extent they exercised a franchise not conferred upon them by their charters. We do not think the State estopped.

By the ninth subdivision of section 2839, Revised Statutes 1889, trust companies are expressly authorized to buy and sell all kinds of government, state, municipal and other bonds, and all kinds of negotiable and non-negotiable paper, stocks and other investment securities. Which of course includes bills of exchange.

There can be no question we think as to the right of the Attorney-General to prosecute this proceeding.

Respondents seem to have been acting in good faith in the exercise of the franchise of receiving moneys on general deposits, upon which no interest was allowed by agreement or otherwise, and although without authority and in excess of their powers, under their charters, we are not disposed to enter judgment of ouster from such franchises as are legally possessed by them, but judgment of ouster from the exercise of the franchises not granted them as herein indicated will be entered.

GANTT, C. J., WILLIAMS, BRACE and ROBINSON, J. J., concur. MARSHALL, J., not sitting.

SHERWOOD, J.—I agree to much that is said in the foregoing opinion, but not to all that is said, nor do I agree that ouster should go. Hereafter, I may give fuller expression to my views.